**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

WYATT WAGNER,

                                        Plaintiff,                        6:25-cv-00659 (BKS/TWD)

v.

COPENHAGEN CENTRAL SCHOOL DISTRICT and
SCOTT CONNELL,

                                        Defendants.

**Appearances:**

*Plaintiff pro se:*
Wyatt Wagner
Copenhagen, NY 13626

*For Defendants:*
Frank W. Miller
Hancock Estabrook, LLP
1800 AXA Tower I
100 Madison Street
Syracuse, NY 13202

**Hon. Brenda K. Sannes, Chief United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.     INTRODUCTION

Plaintiff Wyatt Wagner brings this action under 42 U.S.C. § 1983 and New York law

against Defendants Copenhagen Central School District and Superintendent Scott Connell. (Dkt.

No. 16). Plaintiff alleges that Defendants retaliated against him for protected speech, in violation

of the First Amendment, and violated his Fourteenth Amendment rights to procedural due

process and equal protection. (*Id.*). Plaintiff also brings state law claims for defamation,

negligence, intentional infliction of emotional distress, promissory estoppel, and retaliation under

1

New York's whistleblower protection laws. (*Id.*). Presently before the Court is Defendants' motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 31). The motion is fully briefed. (*See* Dkt. Nos. 31-6, 34, 38). Also before the Court is Plaintiff's motion to appoint counsel. (Dkt. No. 59). For the reasons that follow, Defendants' motion to dismiss is granted in part and denied in part, and Plaintiff's motion to appoint counsel is denied without prejudice.

## II.    FACTS[1]

Plaintiff Wyatt Wagner is the "founder of the nonprofit organization Youth of Lewis County, which provides youth peer support and engagement activities." (Dkt. No. 16, at 3). Defendant Scott Connell is the Superintendent of Defendant Copenhagen Central School District. (*Id.*). Plaintiff previously worked part-time at Cornell Cooperative Extension, "which contracted with [ ] Defendants to provide after-school 4-H programming[.]" (*Id.*).

On November 6, 2024, Plaintiff "raised concerns about student welfare after 4th grade students reported being unfairly punished by a teacher." (*Id.*). Plaintiff and his students had "utilized the gym for [their] 4-H program activities," and Plaintiff "ensured that the students adhered to the rules [he] was previously informed about." (Dkt. No. 1, at 9). However, the students later informed Plaintiff that "the gym teacher made the 4H students walk for the entire

---

[1] These facts are drawn from the Amended Complaint, (Dkt. No. 16), and Plaintiff's response to Defendants' motion to dismiss, (Dkt. No. 34). *See DeRocha v. Linstruth*, No. 18-cv-1052, 2019 WL 5596252, at *1 n.1, 2019 U.S. Dist. LEXIS 188017, at *3 (N.D.N.Y. Oct. 30, 2019) ("The mandate to read the papers of pro se litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss . . . to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint."). In light of Plaintiff's pro se status, and in an abundance of caution, the Court has also considered the Exhibits attached to the original complaint, which are cited throughout the Amended Complaint. (Dkt. No. 1, at 8-49). The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations, *see Lynch v. City of N.Y.*, 952 F.3d 67, 74–75 (2d Cir. 2020), but does not accept as true any legal conclusions asserted therein, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

class the following day." (*Id.*). Plaintiff communicated his concerns to the principal, "who dismissed them as a misunderstanding." (Dkt. No. 16, at 3).

"After the principal's response," Plaintiff "pushed further for an investigation[.]" (*Id.*). On November 7, 2024, Plaintiff "included the school board in an email regarding the situation." (Dkt. Nos. 16, at 3 (citing Dkt. No. 1, at 9)). Plaintiff "requested an in-person meeting with" the school board "to have an open and constructive dialogue about [the] situation[,]" and informed the recipients of the email that he "expect[ed] this issue to be fully addressed by November 15, 2024." (Dkt. No. 1, at 10). Following the email, Connell "directed [P]laintiff's supervisor" at Cornell Cooperative Extension "to reprimand [P]laintiff for including the school board in an email." (Dkt. No. 16, at 3-4).

After Plaintiff was reprimanded, Plaintiff "requested to meet with [ ] Connell to express concerns as both the students' teacher and a resident of the town of Denmark." (*Id.* at 3). "This meeting was granted, and [P]laintiff articulated worries regarding the treatment of the students." (*Id.*). "Following this meeting," Connell "contacted [Cornell Cooperative Extension] and ordered them to reassign [Plaintiff] to another school." (*Id.* at 4). Plaintiff "could not manage transportation to another location," and his position at Cornell Cooperative Extension was "effective[ly] terminat[ed.]" (*Id.*).

In December of 2024, Plaintiff exchanged emails with a school secretary to arrange a date he could come to Copenhagen school to "get the word out there to the youth about [Youth of Lewis County]'s services[.]" (Dkt. No. 1, at 12-14). On December 30, 2024, Plaintiff was given a list of available dates, and on January 10, 2025, the school secretary confirmed that a table would be set up for Plaintiff during the students' lunch period the following Monday, January 13, 2025. (*Id.* at 14).

On January 13, 2025, Plaintiff arrived and signed in for his scheduled visit. (Dkt. No. 16, at 4). "[S]hortly after" Plaintiff went to the designated location, Plaintiff "was approached by [ ] Connell and [D]efendant's school resource officer, who immediately ordered [P]laintiff to leave the premises without providing a valid reason[.]" (Dkt. No. 16, at 4). After Plaintiff was told to leave, Plaintiff "expressed disagreement with [Connell], stating, 'You can't do this.'" (*Id.*). The school "then used [Plaintiff's] dissent and disagreement regarding [D]efendant's actions to charge [P]laintiff with a trespass violation and issue a ban without a hearing, citing security threats and claiming that [P]laintiff created a disruption." (*Id.*). Plaintiff alleges that his behavior would not "typically be considered a security threat—merely a disagreement." (*Id.*).

On January 15, 2025, Plaintiff was issued a trespass notice that restricted his access to the school. (*Id.*). The "Notice of No Trespass" states that, if Plaintiff wishes to access the school's campus, he "will need to make a written request" to Connell "by either written letter at the [provided] address" or by email, providing the "purpose of the access" Plaintiff seeks, his involvement with that purpose, and the time and date. (*See* Dkt. No. 1, at 36-37). "Following these events," Connell also "contacted other schools in the area, causing them to deny [P]laintiff access to their facilities." (Dkt. No. 16, at 4-5).

On May 26, 2025, Plaintiff filed an emergency motion seeking injunctive relief, asking this Court for an "[i]mmediate recission of the trespass notice" and for an order "[p]rohibiting Defendants from interfering with Plaintiff's lawful access to Copenhagen School District facilities for purposes related to Plaintiff's nonprofit work or other lawful activities." (Dkt. No. 5, at 1). The Court held an evidentiary hearing on August 27, 2025, during which the Court denied Plaintiff's emergency motion.

### III.    STANDARD

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* (quoting *Twombly*, 550 U.S. at 555). A court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. See *EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The complaint of a plaintiff proceeding pro se "must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)). "Nonetheless, a pro se complaint must state a plausible claim for relief." *Id.*

### IV.    DISCUSSION

#### A.    Materials Outside the Complaint

As a preliminary matter, Defendants have asked this Court to take judicial notice of "materials submitted on the prior motion for emergency relief[,]" including "records and affidavits of these records on the docket." (Dkt. No. 31-6, at 6 n.1).

On a 12(b)(6) motion, courts may consider:

(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and

relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Weiss v. Inc. Vill. of Sag Harbor*, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011) (citation omitted). "[I]f material is not integral to or otherwise incorporated in the complaint, it may not be considered unless the motion to dismiss is converted to a motion for summary judgment and all parties are 'given a reasonable opportunity to present all the material that is pertinent to the motion.'" *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 231 (2d Cir. 2016).

Defendants cite only one case, *Staehr v. Hartford Fin. Servs. Grp., Inc.*, in support of their request that the Court take judicial notice of materials previously submitted on the motion for injunctive relief. (*See* Dkt. No. 31-6, at 8 (citing 547 F.3d 406 (2d Cir. 2008))). In *Staehr*, the Second Circuit reiterated that in ruling on a Rule 12(b) motion to dismiss, a court may take judicial notice of a filing or an occurrence not "for the truth of the matter asserted," but rather to establish the *fact* that something occurred—such as press coverage, prior lawsuits, regulatory filings, or the filing of a document in another court. *See* 547 F.3d at 425. *Staehr* does not, however, support Defendants' contention that this Court may take judicial notice of affidavits submitted at a prior stage of the litigation. *C.f. Privado Mktg. Grp. LLC v. Eleftheria Rest Corp.*, No. 13-cv-3137, 2014 WL 3377107, at *4, 2014 U.S. Dist. LEXIS 91658, at *13 (S.D.N.Y. July 7, 2014) ("Nothing in [the 12(b)(6)] standard authorizes the Court to use testimonial documents submitted at a prior stage in the litigation in order to supplement a party's otherwise-deficient pleadings[.]").

Defendants have not explained why the Court should take judicial notice of the documents filed in connection with Plaintiff's prior motion for a preliminary injunction, nor have they identified any authority to support their position. To the extent Defendants ask this Court to

consider certain affidavits attached to the original complaint for the truth of the matters asserted therein, the Amended Complaint specifically refers to these affidavits (and the trespass notice) as "false statements about Plaintiff's conduct[.]". (*See* Dkt. No. 16, at 6 (citing Dkt. No. 1, at 20-37)). On a motion to dismiss, the Court is required to "accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor[.]" *See Port Auth.*, 768 F.3d at 253. For these reasons, the Court will not consider documents filed in connection with Plaintiff's motion for injunctive relief in deciding Defendants' motion to dismiss.

Similarly, the Court will not consider the supplemental evidence Plaintiff seeks to have the Court consider—an email from SHAPE AMERICA to Plaintiff regarding the use of physical activity as a form of punishment—because it is not integral to or incorporated in the Amended Complaint. (Dkt. No. 65).[2] Plaintiff's motion to supplement the record with this email (Dkt. No. 65) is therefore denied.

**B.    Federal Claims**

**1.  Claims Against the Copenhagen Central School District**

Defendants seek dismissal of all federal civil rights claims against the Copenhagen Central School District. (Dkt. No. 31-6, at 8). Defendants argue that Plaintiff has made "no allegations of any municipal policy, municipal custom, practice, or that Mr. Connell acted as a final policy maker or that he established a policy regarding the same." (*Id.* at 9). Plaintiff disagrees, arguing that "[a] municipality can be held liable for the single act of an official who possesses final policymaking authority in a specific area." (Dkt. No. 34, at 8 (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986))). Plaintiff asserts that Connell, as the District

---

[2] This matter was fully briefed, and the Court has considered all of the parties' submissions. (*See* Dkt. Nos. 65; 66; 69).

Superintendent, is responsible for "administering all policies" and therefore "[h]is decision was the final word on the matter." (*Id.* at 8-9).

The Copenhagen Central School District is subject to liability under section 1983 pursuant to the doctrine of municipal liability. *See Dodson v. Bd. of Educ. of the Valley Stream Union Free Sch. Dist.*, 44 F. Supp. 3d 240, 246 (E.D.N.Y. 2014). Municipal liability is limited under section 1983 by *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). In *Monell*, the Supreme Court found that municipal liability existed "where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006). Thus, to successfully state a claim for *Monell* liability, a plaintiff must "make factual allegations that support a plausible inference that the [alleged] constitutional violation took place pursuant either to a formal course of action officially promulgated by the municipality's governing authority or the act of a person with policy making authority for the municipality." *Missel v. Cnty. of Monroe*, 351 F. App'x 543, 545 (2d Cir. 2009) (citing *Vives v. City of N.Y.*, 524 F.3d 346, 350 (2d Cir. 2008)). "Absent such a custom, policy, or usage, a municipality cannot be held liable on a respondeat superior basis for the tort of its employee." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *see also Los Angeles County, Cal. v. Humphries*, 562 U.S. 29, 36 (2010) ("[I]n *Monell* the Court held that 'a municipality cannot be held liable' solely for the acts of others, e.g., 'solely because it employs a tortfeasor.'" (quoting *Monell*, 436 U.S. at 691)).

"A school district's liability under *Monell* may be premised on any of three theories: (1) that a district employee was acting pursuant to an expressly adopted official policy; (2) that a district employee was acting pursuant to a longstanding practice or custom; or (3) that a district employee was acting as a 'final policymaker.'" *Casler v. W. Irondequoit Sch. Dist.*, 563 F. Supp.

3d 60, 71 (W.D.N.Y. 2021) (quoting *Hurdle v. Bd. of Educ. of City of New York*, 113 F. App'x

423, 424-25 (2d Cir. 2004)). "Where a plaintiff seeks to hold a municipality liable for a single

decision by a municipal policymaker, the plaintiff must show that the official had final

policymaking power." *Jones v. Bay Shore Union Free Sch. Dist.*, 170 F. Supp. 3d 420, 438

(E.D.N.Y. 2016) (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 37 (2d Cir. 2008)), *aff'd,* 666 F.

App'x 92 (2d Cir. 2016). "[T]he critical inquiry is not whether an official generally has final

policymaking authority; rather, the court must specifically determine whether the government

official is a final policymaker with respect to the particular conduct challenged in the lawsuit."

*Id.* "[W]here a plaintiff relies not on a formally declared or ratified policy, but rather on the

theory that the conduct of a given official represents official policy, it is incumbent on the

plaintiff to establish that element as a matter of law." *Id.* (quoting *Jeffes v. Barnes*, 208 F.3d 49,

57-58 (2d Cir. 2000)). "It does not suffice for these purposes that the official has been granted

discretion in the performance of [their] duties." *Jeffes*, 208 F.3d at 57. "The official must also be

responsible for establishing final government policy respecting such activity before the

municipality can be held liable." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 482–83 (1986).

   "Under New York Education law, a Superintendent is subject to the direction and

supervision of the Board of Education, and has no vote on Board decisions." *Jones*, 170 F. Supp.

3d at 438 (citing N.Y. Educ. Law § 1711(2)(a),(3)). "Boards of Education have final authority

over various matters, including [ ] regulating conduct on district property." *Id.* (citing N.Y. Educ.

Law §§ 1708-1709, 2801). "New York Education law gives the Superintendent the power '[t]o

enforce all provisions of law and all rules and regulations . . . of the board of education,' but not

to promulgate or otherwise create rules, regulations, or policies of [their] own." *Id.* (quoting N.Y.

Educ. Law § 1711). "While a Superintendent may be a decision-maker, the Board of Education is the final policymaker." *Id.* (citation omitted).

Here, Plaintiff contends that Connell's decision to issue the trespass notice "was the final word on the matter[,]" and as such "his actions represent official District policy[.]" (Dkt. No. 34, at 9). But the fact that Connell "has been granted discretion in the performance of his duties" is not enough to establish that Connell acted as a final policymaker. *See Jeffes*, 208 F.3d at 57. That Connell's decision "was the final word on the matter" is likewise insufficient to allege that Connell acted as a final policymaker. *See Hurdle*, 113 F. App'x at 427 ("Authority to make a final decision need not imply authority to establish rules. . . . That a particular agent is the apex of a bureaucracy makes the decision 'final' but does not forge a link between 'finality' and 'policy.'" (citation omitted)). Plaintiff has identified no state law or regulation supporting his position that Connell, as opposed to the school board, has final authority over conduct on district property.[3] *See Jones*, 170 F. Supp. at 438-39 (citing N.Y. Educ. Law §§ 1708-1709, § 1711(2)(a),(3), 2801). All of the actions allegedly taken by Connell were discretionary enforcement actions. Accordingly, Defendants' motion to dismiss Plaintiff's federal civil rights claims against the District is granted.

### 2. First Amendment Retaliation

Defendants argue that Plaintiff's First Amendment retaliation claim is without merit, because Plaintiff's conduct "was not protected speech or protected activity[,]" and "even if the speech were protected," "Plaintiff's own conduct gave rise to appropriate intervention by a

---

[3] Plaintiff cites to the District's "own policies" which "designate the Superintendent as the 'chief executive officer of the District' who is responsible for 'administering all policies[.]'"(Dkt. No. 34, at 8 (citing Dkt. No. 34-4, at 10-12). But these policies do not grant Connell policymaking authority; rather, as Plaintiff himself notes, the Superintendent is "empowered" to "translate *policies of the Board* into action[.]" (*Id.* (citing Dkt. No. 34-4, at 10 (emphasis added))).

school resource officer to arrest the Plaintiff and remove him from the premises." (Dkt. No. 31-6, at 17).[4] Plaintiff disagrees, arguing that his "email advocating for students who were unfairly punished is protected speech on a matter of public concern[,]" and that the "temporal proximity between [his] advocacy and the adverse actions" against him suggests a causal connection. (Dkt. No. 34, at 10).

"To plead a First Amendment retaliation claim a plaintiff must show: (1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury." *Dorsett*, 732 F.3d at 160. "If an official takes adverse action against someone for engaging in protected speech, and 'non-retaliatory grounds are in fact insufficient to provoke the adverse consequences,' the injured person may generally seek relief by bringing a First Amendment claim." *Handsome, Inc. v. Town of Monroe*, No. 23-711, 2024 WL 2747142, at *5, 2024 U.S. App. LEXIS 12830, at *13 (2d Cir. May 29, 2024) (quoting *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (internal quotations omitted)). "The official's retaliatory motive must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id.*

With respect to the first element, Defendants argue that "it is not a legitimate form of speech to create a disruption in a schoolhouse while classes are in session causing disruption in

---

[4] Defendants also argue, with respect to Plaintiff's termination from his previous employment, that they are not responsible for actions taken by Plaintiff's previous employer. (Dkt. No. 31-6, at 15). Plaintiff disagrees, asserting that he suffered an adverse action when Connell contacted his employer with false allegations leading to his termination. (Dkt. No. 34, at 10). In the First Amendment retaliation context, an "adverse action" is "conduct that would deter a similarly situated individual of ordinary firmness from exercising [their] constitutional rights." *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 273 (2d Cir. 2011) (citation omitted); *see also Dorsett v. County of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013) (noting that a First Amendment retaliation plaintiff must "show *either* that [their] speech has been adversely affected by the government retaliation or that [they have] suffered some other concrete harm" and collecting cases). Here, the Court will not decide whether a phone call to Plaintiff's employer with allegedly false allegations would constitute an "action" that caused Plaintiff injury for the purposes of a First Amendment Retaliation claim, because Defendants have not briefed the issue.

school operations." (Dkt. No. 31-6, at 17). But this misrepresents the basis of Plaintiff's claim. Plaintiff does not assert that "creat[ing] a disruption in a schoolhouse" is a form of protected speech; rather, Plaintiff contends Defendants retaliated against him for "[a]dvocating for student welfare" and "[r]eporting staff misconduct[.]" (Dkt. No. 16, at 6). Defendants do not address whether Plaintiff's email to the school board constituted protected speech, nor have they briefed the Court on the applicable law.[5] As such, the Court will not dismiss the Complaint on this basis. *See Whitley v. Bowden*, No. 17-cv-3564, 2018 WL 2170313, at *12, 2018 U.S. Dist. LEXIS 79287, at *43 (S.D.N.Y. May 10, 2018) (declining to consider argument for dismissal where defendants cited "generic caselaw" in a single sentence; argument was "not sufficiently argued" by defendants, "who [were] represented by counsel and attempting to dismiss a pro se Complaint" (quoting *Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998))) (collecting cases).

Defendants also argue that the causation element is not satisfied because the "very allegations of the complaint support that the actions of the Defendants were not motivated by some illegal or inappropriate motive but rather were based on objectively reasonable criteria." (Dkt. No. 31-6, at 17).[6] Plaintiff disagrees, arguing he "suffered a series of severe adverse actions" after he sent an email "advocating for students" to the school board. Plaintiff argues that "the causal connection is established by the temporal proximity between [his] advocacy and the adverse actions," (Dkt. No. 34, at 10), and in the "pattern of antagonism" that followed his alleged protected conduct, (Dkt. No. 16, at 6).

---

[5] The Court notes that at least one court in the Second Circuit has found that a citizen's right to advocate for students at public meetings is an interest protected by the First Amendment. *See, e.g., Jones*, 170 F. Supp. 3d at 433 ("Plaintiff has adequately demonstrated an interest protected by the First Amendment: his right to advocate for minority students within the District at public meetings.").

[6] Plaintiff's sole citation in support of this assertion is to *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 285 (1977). But *Mt. Healthy* does not support dismissal. In *Mt. Healthy*, the Court found that the plaintiff had carried his burden to show causation, but that the lower court had erred in subsequently failing to conduct the proper burden-shifting analysis. 429 U.S. at 287.

The Second Circuit has observed that it is difficult to plead a defendant's motive and intent with specificity in a complaint. *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 195 (2d Cir. 1994). "Such matters [as the defendants' motivation] are required only to be averred generally in a complaint, and need not be pled with specificity." *Jones v. Bay Shore Union Free Sch. Dist.* (*Jones II*), 947 F. Supp. 2d 270, 276 (E.D.N.Y. 2013) (internal quotations and citation omitted). "[T]o survive a motion to dismiss for lack of causation, 'the plaintiff's pleading need not clearly establish that the defendant harbored retaliatory intent. It is sufficient to allege facts which could reasonably support an inference to that effect.'" *Stajic v. City of New York*, 214 F. Supp. 3d 230, 235 (S.D.N.Y. 2016) (quoting *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 418 (2d Cir. 1999)). Causation may be shown "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of [others] who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Clayton v. City of Middletown*, 564 F. Supp. 2d 105, 112 (D. Conn. 2008) (quoting *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)). *See also Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (citations omitted)) (noting that the Court may "exercise its judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases") (citation omitted).

Here, Defendants do not cite any facts in the Amended Complaint supporting their assertion that "[t]he very allegations of the complaint" show that Defendants did not have an "illegal or inappropriate motive[.]" (Dkt. No. 31-6, at 17). Plaintiff alleges that, after he raised concerns about student welfare, Connell contacted his employer and demanded Plaintiff be reprimanded and reassigned. (*See* Dkt. No. 16, at 3-4). Two months later, when Plaintiff was

13

scheduled to table for his youth advocacy organization at Copenhagen Central School, he was confronted by Connell, ordered to leave the premises, and issued a trespass notice. (*Id.* at 4). Mindful of the Second Circuit's acknowledgement that it is difficult to plead a defendant's motive and intent with specificity in a complaint, *see Gagliardi*, 18 F.3d at 195, the Court finds Plaintiff's allegations sufficient "to raise a right to relief above the speculative level" with respect to Plaintiff's First Amendment retaliation claim, *see Mayor*, 709 F.3d at 135. Plaintiff has satisfied his burden by alleging Defendants' motivation "generally[,]" and Defendants' motion to dismiss is therefore denied with respect to Plaintiffs' First Amendment Retaliation claim. *See Jones II*, 947 F. Supp. 2d at 276 (holding that the court could not decide issue of the defendant school district's motivation at the motion to dismiss stage, where the plaintiff was an "outspoken critic" of the school district and was no longer permitted on district property).

### 3. Procedural Due Process

Courts "examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Bangs v. Smith*, 84 F.4th 87, 97 (2d Cir. 2023)." In order to sufficiently allege a due process claim, [ ] a plaintiff must first allege a protected liberty or property interest." *Jones II*, 947 F. Supp. 2d at 279. "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." *Bangs*, 84 F.4th at 97 (quoting *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005)). "Mere expectations do not necessarily give rise to a state-created liberty interest protected by the Due Process Clause." *Rodriguez v. McLoughlin*, 214 F.3d 328, 338 (2d Cir. 2000). "[A] State creates a protected liberty interest by placing substantive limitations on official

discretion." *Kentucky Department of Corrections v. Thompson,* 490 U.S. 454, 462 (1989) (citation omitted).

Defendants argue that that Plaintiff does not possess "a protected property right in attending events on school property[.]" (Dkt. No. 31-6, at 19). The Court agrees. "Access to school grounds [ ] is not a protected liberty or property interest." *See Jones II*, 947 F. Supp. 2d at 279 (collecting cases); *Doe v. Salina*, No. 23-cv-3529, 2024 WL 5077629, at *22, 2024 U.S. Dist. LEXIS 224362, at *68 (E.D.N.Y. Dec. 11, 2024) (holding superintendent's "No Trespass Letter 'forbidding [Plaintiff] from entering school grounds [without the express written consent of the Superintendent]'" failed to implicate a protected liberty or property interest (quoting *Silano v. Sag Harbor Union Free Sch. Dist. Bd. of Educ.*, 42 F.3d 719, 724 (2d Cir. 1994))). Plaintiff contends that Defendants "created a protected liberty interest" when the District "granted [him] explicit permission to be on school property for the January 13th event[,]" and Plaintiff "had a legitimate claim of entitlement to be there for the specified purpose and duration." (Dkt. No. 34, at 10-11). But Plaintiff points to no "expectation or interest created by state laws or policies" from which the Court could infer such an entitlement, *see Bangs*, 84 F.4th at 97, nor does he cite any authority suggesting that an email granting "permission" to enter school property on one occasion creates a protected liberty or property interest. *C.f. Silano*, 42 F.3d at 725 (holding school district's "general policy statement" welcoming "members of the community and other persons to visit the schools" did not "vest the public with a protected liberty interest in visiting [district] schools"). Because Plaintiff has failed to allege a liberty or property interest in attending events on school property, Defendants' motion to dismiss Plaintiff's procedural due process claim is granted.

### 4.  Equal Protection

Defendants seek dismissal of Plaintiff's equal protection claim because Plaintiff has "failed to designate or describe in the pleading other persons similarly situated." (Dkt. No. 31-6, at 21). Plaintiff disagrees, arguing he has "stated a plausible 'class of one' equal protection claim by alleging [he] was intentionally treated differently from other similarly situated community partners without a rational basis." (Dkt. No. 34, at 11).

The Equal Protection Clause of the Fourteenth Amendment states that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Equal Protection Clause "requires that the government treat all similarly situated people alike." *Harlen Assocs. v. Incorporated Village of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). "[T]he prototypical equal protection claim involves discrimination against people based on their membership in a vulnerable class." *Id.* Where a plaintiff does not allege membership in a protected class or group, they may nevertheless state an equal protection claim by alleging that either they were discriminated against as a "class of one" or the laws were selectively enforced against them for impermissible reasons. *See Missere v. Gross*, 826 F. Supp. 2d 542, 560 (S.D.N.Y. 2011); *see also Mosdos Chofetz Chaim, Inc. v. Village of Wesley Hills*, 815 F. Supp. 2d 679, 693 (S.D.N.Y. 2011).

To state a "class-of-one" equal protection claim, a plaintiff must plausibly allege that they were "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). This requires a plaintiff to establish: "that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify

the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in

circumstances and difference in treatment are sufficient to exclude the possibility that the

defendants acted on the basis of a mistake." *Progressive Credit Union v. City of New York*, 889

F.3d 40, 49 (2d Cir. 2018) (quoting *Ruston v. Town Bd. For Skaneateles*, 610 F.3d 55, 59-60 (2d

Cir. 2010)). To prevail on such a claim, a plaintiff "must show an extremely high degree of

similarity between themselves and the persons to whom they compare themselves." *Id.* (quoting

*Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006)). Plaintiffs must be "prima facie

identical" to the comparators because this comparison provides an inference that the difference in

treatment "lack[s] any reasonable nexus with a legitimate governmental policy." *Id.* (quoting

*Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005), *overruled on other grounds, Appel v.

Spiridon*, 531 F.3d 138, 140 (2d Cir. 2008)).

Here, the Complaint contains no allegations identifying any "similarly situated

community partner." (*See* Dkt. No. 34, at 11).  Plaintiff has not shown an "extremely high degree

of similarity" between himself and any other individual, as would support a class-of-one claim.

*See Progressive Credit Union*, 889 F.3d at 49. Therefore, Plaintiff has not plausibly stated a

class-of-one claim, and Defendants' motion to dismiss Plaintiff's equal protection claim is

granted.

### 5. Qualified Immunity

Defendants contend that the federal claims against Connell are barred by the doctrine of

qualified immunity. (Dkt. No. 31-6, at 10). Qualified immunity is an affirmative defense on

which defendants bear the burden of proof. *Vincent v. Yelich*, 718 F.3d 157, 166 (2d Cir. 2013).

For a qualified immunity defense asserted in a motion to dismiss to be successful, the "facts

supporting the defense [must] appear on the face of the complaint," and the plaintiff "is entitled

to all reasonable inferences from the facts alleged . . . that defeat the immunity defense."

*McKenna v. Wright*, 386 F.3d 432, 434, 436 (2d Cir. 2004) (describing a defendant's burden of

establishing a qualified immunity defense in a Rule 12(b)(6) motion as a "formidable hurdle").

"Therefore, although possible, '*usually*, the defense of qualified immunity cannot support the

grant of a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted.'"

*Hershey v. Goldstein*, 938 F. Supp. 2d 491, 521 (S.D.N.Y. 2013) (quoting *McKenna*, 386 F.3d at

436) (internal punctuation omitted). It is premature to resolve a qualified immunity defense on

the basis of allegations in a complaint when those allegations "do not sufficiently 'support the

defense on the face of the complaint.'" *Id.* (quoting *McKenna*, 386 F.3d at 435) (internal

punctuation omitted).

Here, Defendants assert that Connell is entitled to qualified immunity based on Connell's

"objectively reasonable, good faith belief[s]." (Dkt. No. 31-6, at 11). But Defendants' argument

relies on issues of fact, with citations to affidavits submitted in connection with the prior motion

for preliminary relief. (*Id.* at 10-11). Defendants do not cite to any facts appearing on the face of

the Amended Complaint that support their qualified immunity defense. Therefore, Defendants'

motion to dismiss based on qualified immunity is denied without prejudice.

## C.    State Law Claims

### 1.    Notice of Claim

Defendants argue that all of Plaintiff's state law claims must be dismissed because he has

failed to "submit to a lawful 50-h examination." (Dkt. No. 31-6, at 22). Plaintiff disagrees,

arguing that Defendants "waived their right" to a 50-h examination, because Defendants

adjourned the original hearing and "failed to reschedule for the 'earliest possible date available'"

as required by law. (Dkt. No. 34, at 7 (citing N.Y. Gen. Mun. Law § 50-h(5))).

Under section 50-e of New York's General Municipal Law, "[a]s a condition precedent to bringing a state law tort claim against a municipality[,] a plaintiff must file a Notice of Claim within ninety days after [their] claim accrues." *Frantz v. City of Oswego*, No. 15-cv-1193, 2017 WL 4737258, at *4, 2017 U.S. Dist. LEXIS 173413, at *10 (N.D.N.Y. Oct. 19, 2017) (quoting *Przybyla v. Cty. of Suffolk*, No. 09-cv-5129, 2017 WL 1274051, at *2, 2017 U.S. Dist. LEXIS 30842, at *3-4 (E.D.N.Y. Mar. 3, 2017)).[7] Under section 50-h of New York's General Municipal Law, "[a]fter a notice of claim is filed against a school district, the district "shall have the right to demand an examination of the claimant[.]" *G.D.S.*, 915 F. Supp. 2d at 280 (quoting N.Y. Gen. Mun. Law § 50-h(1)). "Where a demand for examination has been served [ ] no action shall be commenced against the [ ] school district against which the claim is made unless the claimant has duly complied with such demand for examination[.]" N.Y. Gen. Mun. Law § 50-h(5). Section 50-h(5) further provides:

> If such examination is not conducted within ninety days of service of the demand, the claimant may commence the action. The action, however, may not be commenced until compliance with the demand for examination if the claimant fails to appear at the hearing or requests an adjournment or postponement beyond the ninety day period. If the claimant requests an adjournment or postponement beyond the ninety day period, the [ ] school district shall reschedule the hearing for the earliest possible date available.

"Notice of Claim requirements are construed strictly and failure to comply ordinally leads to [dismissal] of the state law causes of action." *Williams v. City of Syracuse*, No. 22-cv-0067, 2023 WL 1071437, at *5, 2023 U.S. Dist. LEXIS 14395, at *13 (N.D.N.Y. Jan. 27, 2023) (citing *Hardy v. N.Y. City Health & Hosp. Corp.*, 164 F.3d 789, 793-94 (2d Cir. 1999)).

---

[7] The notice of claim requirements also apply to plaintiffs bringing tort actions against a school district. *See G.D.S. ex rel. Slade v. Northport-E. Northport Union Free Sch. Dist.*, 915 F. Supp. 2d 268, 280 (E.D.N.Y. 2012); N.Y. Gen. Mun. Law § 50-h(1).

Defendants seek dismissal of all of Plaintiff's state law claims, arguing that Plaintiff filed a notice of claim but failed "to submit to a lawful 50-h examination." (Dkt. No. 31-6, at 22). Plaintiff argues that Defendants adjourned the original date of the 50-h of the examination without his consent, failed to reschedule for the earliest available date, and did not "provide a link or any means of access" for the rescheduled date. (Dkt. No. 34, at 7-8). Defendants have filed a copy of a new demand for examination, which is dated July 2, 2025. (Dkt. No. 31-4). But Plaintiff does not allege he was ever served with such a demand—in fact, Plaintiff alleges he was not given a way to access that meeting. (Dkt. No. 34, at 8). The parties' arguments thus rely on materials outside the Amended Complaint and appear to hinge on factual disputes. (*See, e.g.,* Dkt. Nos. 31-1; 34-1; 34-2).

The Court cannot consider this dispute, based on evidence outside the Amended Complaint, on this motion to dismiss. Neither the Amended Complaint nor Plaintiff's briefing indicates the date upon which Plaintiff was served with a demand for examination—nor whether he was served with a second demand related to a "later-proposed hearing on July 16[.]" (*See* Dkt. No. 34, at 8). *See also Nolan v. Cnty. of Erie*, No. 19-cv-01245, 2020 WL 1969329, at *4, 2020 U.S. Dist. LEXIS 72729, at *13 (W.D.N.Y. Apr. 24, 2020) ("[A] plaintiff will not be barred from pursuing state law claims in federal court prior to submitting to a § 50-h examination when there is a "dispute that the demand for examination was properly served in the first place." (quoting *Foy v. City of N.Y.*, 2019 WL 3717317, at *9, 2019 U.S. Dist. LEXIS 132714, at *25 (E.D.N.Y. Aug. 7, 2019))). Therefore, the Court will not dismiss Plaintiff's state law claims for failure to

comply with state notice of claim requirements at this time, and the motion to dismiss on this basis is denied without prejudice.[8]

### 2. Defamation

Defendants assert that Plaintiff's defamation claim must be dismissed because Plaintiff has made "only generalized allegations of alleged false and defamatory statements about the Plaintiff[,]" and "Plaintiff has not identified any of those statements[.]" (Dkt. No. 31-6 at 23). Defendants also argue that Plaintiff has not alleged that Defendants "have in any way publicized these statements to any person outside the members of the Board of Education or the office of the Superintendent." (*Id.*).[9] Plaintiff disagrees, noting that he alleges the statements were false and that they were "published to [his] employer (causing [his] termination) and to law enforcement (causing [his] arrest), and they have irreparably harmed [his] professional reputation." (Dkt. No. 34, at 11).

To state a claim for defamation under New York law, a plaintiff must allege "(1) a false statement that is (2) published to a third party (3) without privilege or authorization, and that (4) causes harm, unless the statement is one of the types of publications actionable regardless of harm." *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017). "New York law mandates that in actions for defamation, 'the particular words complained of shall be set forth in the

---

[8] The Court notes that a notice of claim is not necessary with respect to Plaintiff's promissory estoppel claim. *See NRP Holdings LLC v. City of Buffalo*, No. 11-CV-472S, 2015 WL 9463199, at *4, 2015 U.S. Dist. LEXIS 172153, at *11 (W.D.N.Y. Dec. 28, 2015), *aff'd*, 916 F.3d 177 (2d Cir. 2019).

[9] Defendants further assert that Plaintiff has failed to allege that the statements were "motivated by malice." (Dkt. No. 31-6, at 23). However, the case that Defendants cite in support of this proposition makes no mention of malice. (*Id.* (citing *Wegner v. Town of Cheektowaga*, 73 N.Y.S.3d 300 (N.Y. App. Div. 2018))). Moreover, a plaintiff is not necessarily required to allege malice on the part of the speaker. *See Grayson v. Ressler & Ressler*, 271 F. Supp. 3d 501, 514 (S.D.N.Y. 2017) (noting alleged defamatory statement must be made "with the applicable level of fault on the part of the speaker"); *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 456 (S.D.N.Y. 2012) (observing that, with respect to "fault," a plaintiff must plead "either negligence or actual malice depending on the status of the libeled party").

complaint.'" *Rsrv. Sols. Inc. v. Vernaglia*, 438 F. Supp. 2d 280, 289 (S.D.N.Y. 2006) (quoting

N.Y. C.P.L.R. 3016(a)). However, "[u]nlike in state court, defamation claims brought in federal

court are not subject to a heightened pleading standard. *Conti v. Doe*, No. 17-cv-9268, 2019 WL

952281, at *8, 2019 U.S. Dist. LEXIS 31408, at *21 (S.D.N.Y. Feb. 27, 2019) (citing *Biro*, 883

F. Supp. 2d at 456). "Nevertheless, allegations of defamation pleaded in federal court must 'be

specific enough to afford [the] defendant sufficient notice of the communications complained of

to enable him to defend himself.'" *Id.*

Here, Defendants incorrectly assert that Plaintiff is required to state "the actual words of

either libel or slander" in the Amended Complaint. (*See* Dkt. No. 31-6, at 23); *D'Annunzio v.

Ayken, Inc.*, 876 F. Supp. 2d 211, 216 (E.D.N.Y. 2012) ("A plaintiff need not plead a defamatory

statement *in haec verba,* but the pleadings must be sufficient to 'afford the defendant sufficient

notice of the communications complained of to enable [them] to defend [them]self.' (quoting

*Kelly v. Schmidberger,* 806 F.2d 44, 46 (2d Cir. 1986))). Nevertheless, the Court agrees that

Plaintiff has failed to sufficiently identify the allegedly defamatory statements or to whom those

statements were made. (Dkt. No. 31-6, at 23). To the extent that Plaintiff's defamation claim is

based on Connell's contact with Plaintiff's employer—namely, that Connell "directed

[Plaintiff's] supervisor to reprimand plaintiff for including the school board in an email[,]" and

subsequently "ordered" Plaintiff's employer "to reassign [him] to another school"—the

Amended Complaint does not allege that Connell made any false statements during those phone

calls. (*See* Dkt. No. 16, at 3-4). Plaintiff's response memorandum offers only conclusory

assertions that Connell made false statements to Plaintiff's employer. (*See* Dkt. No. 34, at 10-

11).

With respect to the trespass notice, Plaintiff does not allege how or when this notice was "communicated to third parties, including law enforcement and other educational institutions." (*See* Dkt. No. 16, at 7). Plaintiff's generalized allegations of "professional blacklisting" are also insufficient to state a claim; while Plaintiff alleges Connell "contacted other schools in the area, causing them to deny plaintiff access to their facilities" such that his "ability to conduct youth programming and nonprofit work" has been "severely impacted[,]" (*see* Dkt. No. 16, at 4-5), Plaintiff does not provide any details as to which schools were contacted, when they were contacted, or what was said. *See Thai v. Cayre Group, Ltd.,* 726 F.Supp.2d 323, 329 (S.D.N.Y.2010) ("A defamation claim is only sufficient if it adequately identifies the purported communication, and an indication of who made the communication, when it was made, and to whom it was communicated." (citation omitted)). Because Plaintiff does not plead facts "specific enough to afford" Defendants "sufficient notice of the communications complained of" to enable them to defend themselves, Defendants' motion to dismiss is granted with respect to Plaintiff's defamation claims. *See Conti*, 2019 WL 952281, at *8, 2019 U.S. Dist. LEXIS 31408, at *21.

### 3. Whistleblower Protection

Defendants argue that Plaintiff's claim under New York State Whistleblower law must be dismissed, because Plaintiff, as "a volunteer working for an outside organization[,]" "has not alleged circumstances that bring him within the scope of" the Whistleblower law, and Plaintiff has not alleged a "danger to the public health and safety." (Dkt. No. 31-6, at 24-25. Plaintiff disagrees, asserting that NY Labor Law § 740 "now protects 'natural persons employed as independent contractors[,]'" and that his "report of improper student punishment constitutes a report of potential danger to the welfare of minors." (Dkt. No. 34, at 12).

23

"Section 740 prohibits an employer from 'tak[ing] any retaliatory action against an employee . . . because such employee . . . discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that the employee reasonably believes is in violation of law, rule or regulation.'" *Callahan v. HSBC Sec. (USA) Inc.*, 723 F. Supp. 3d 315, 326 (S.D.N.Y. 2024) (quoting N.Y. Lab. Law § 740(2)(a)). Section 740's definition of "employee" includes "natural persons employed as independent contractors to carry out work in furtherance of an employer's business enterprise[.]" N.Y. Lab. Law § 740(1)(a). "Under Section 740, neither the complaint to the employer nor the complaint filed in court need identify the actual law, rule, or regulation the employer violated, but 'the employee's complaint to the company must identify the particular activities, policies or practices in which the employer allegedly engaged, so that the complaint provides the employer with notice of the allegedly complained-of conduct.'" *HC2, Inc. v. Delaney*, 510 F. Supp. 3d 86, 96 (S.D.N.Y. 2020) (quoting *Tonra v. Kadmon Hldg's, Inc.*, 405 F. Supp. 3d 576, 586 (S.D.N.Y. 2019)). "Moreover, the substantive allegations of the complaint must allege facts that, if true, would violate a specific law, rule or regulation." *Id.* (collecting cases).

"New York courts have also stringently construed the requirement that a plaintiff seeking to state a Section 740 claim properly plead that the employer's conduct presented a 'a substantial and specific danger to the public health and safety.'" *Barker v. Peconic Landing at Southold, Inc.*, 885 F. Supp. 2d 564, 570 (E.D.N.Y. 2012) (quoting N.Y. Labor L. § 740(2)(a)). "Thus, the statute has been construed as requiring a 'certain quantum of dangerous activity before its remedies are implicated.'" *Id.* (quoting *Peace v. KRNH, Inc.,* 785 N.Y.S.2d 547, 549 (N.Y. App. Div. 2004)).

The Court agrees that Plaintiff has not alleged facts that, if true, would present a "substantial and specific danger to the public health and safety." *See Barker*, 885 F. Supp. 2d at 570. Plaintiff's sole allegation of allegedly unfair punishment is that his 4-H students were, on one occasion, required to walk for the duration of gym class. (*See* Dkt. No. 1, at 9). Plaintiff's conclusory assertion that a single incident of "improper student punishment" presents "a potential danger to the welfare of minors," (*see* Dkt. No. 34, at 12), without citation to any authority or to state law, is insufficient to plausibly allege that Defendants violated a specific law, rule or regulation. *See HC2, Inc.*, 510 F. Supp. 3d at 96. Therefore, Defendants' motion to dismiss is granted with respect to Plaintiff's whistleblower claims.

### 4. Negligence

Defendants assert that Plaintiff's claim for negligence must be dismissed, because "there was no duty owed to [Plaintiff] and further, there was no breach of that duty[.]" (Dkt. No. 31-6, at 26). Plaintiff disagrees, arguing that Defendants owed him a duty of care "as an invited visitor," and Defendants "breached this duty by failing to follow their own policies and acting arbitrarily, leading to [his] wrongful removal and arrest[.]" (Dkt. No. 34, at 12).

To establish a prima facie case of negligence under New York law, a plaintiff must show: "(1) the defendant owed the plaintiff a cognizable duty of care; (2) the defendant breached that duty; and (3) the plaintiff suffered damage as a proximate result." *Noakes v. Syracuse Univ.*, 369 F. Supp. 3d 397, 420 (N.D.N.Y. 2019) (quoting *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006)). While the Court has serious doubts as to the viability of Plaintiff's negligence claim, Defendants have cited no applicable caselaw supporting their position that a school district owes no duty of care to a visitor who had scheduled to be at a table at the school. (*See* Dkt. No. 31-6, at 26). Defendants' assertion that there was "no breach of [any] duty" is

likewise unsupported by caselaw, or by any explanation. (*See id.*). Therefore, the Court will not grant Defendants' motion to dismiss Plaintiff's negligence claim at this time. *See Clarke v. Antonini*, No. 21-cv-1877, 2022 WL 4387357, at *5, 2022 U.S. Dist. LEXIS 171707, at *13 (S.D.N.Y. Sept. 22, 2022) (denying motion to dismiss where defendants "fail[ed] to provide any arguments or legal authority supporting their position"); *accord Bisson v. Reppel*, No. 13-cv-245, 2014 WL 3386059, at *4, 2014 U.S. Dist. LEXIS 92954, at *10 (D. Vt. July 9, 2014).

### 5. Intentional Infliction of Emotional Distress

Defendants seek dismissal of Plaintiff's claim for intentional infliction of emotional distress, arguing that Plaintiff has failed to meet the "stringent pleading standard" required to make such a claim. (Dkt. No. 31-6, at 27). Plaintiff disagrees, arguing that "a public official fabricating a pretext to have a citizen arrested and professionally ruined in retaliation for speech can be considered [ ] outrageous in character[.]" (Dkt. No. 34, at 12-13 (internation quotations and citation omitted)).

The Court agrees that Plaintiff has failed to plausibly state a claim. In New York, "a claim for intentional infliction of emotional distress requires a showing of (1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999); *accord. Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 158 (2d Cir. 2014). Conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society," *Stuto*, 164 F.3d at 827, and "[w]hether the alleged conduct is sufficiently outrageous enough to satisfy [this element] is a matter of law for a court to decide[,]" *Baez v. JetBlue Airways*, 745 F. Supp.

2d 214, 223 (E.D.N.Y. 2010). "[T]he standard for stating a valid claim of intentional infliction of emotional distress is rigorous, and difficult to satisfy." *Id.* (quoting *Conboy v. AT & T Corp.,* 241 F.3d 242, 258 (2d Cir. 2001)).

Here, Plaintiff alleges that Connell issued a trespass notice based on "alleged undocumented and uncommunicated incidents[,]" and that his contact with other schools has "severely impacted [P]laintiff's ability to conduct youth programming[,]" (*see* Dkt. No. 16, at 4-5). These actions are not sufficiently outrageous or extreme to plausibly state a claim. *See Lan Sang v. Ming Hai*, 951 F. Supp. 2d 504, 530 (S.D.N.Y. 2013) ("The 'rigor of the outrageousness standard [for intentional infliction of emotional distress] is well-established,'" and the threshold is "exceedingly difficult to meet." (quoting *Mesa v. City of N.Y.*, No. 09-cv-10464, 2013 WL 31002, at *28, 2013 U.S. Dist. LEXIS 1097, at *85 (S.D.N.Y. Jan. 3, 2013))). Thus, the Court grants Defendants' motion to dismiss with respect to Plaintiff's claims for intentional infliction of emotional distress.

### 6. Promissory Estoppel

Defendants seek dismissal of Plaintiff's promissory estoppel claim, arguing that, while Plaintiff alleges "in conclusory fashion that the 'school district' made a clear and unambiguous promise to allow him access to the school for a scheduled event on January 13, 2024," "Plaintiff fails to allege who made the promise and what the details of the promise were." (Dkt. No. 31-6, at 28). Plaintiff asserts that the emails from District staff "constitute a clear and unambiguous promise of access" for the January 13, 2025 event, and that he "reasonably relied on this promise" and "suffered a direct injury . . . as a result of the District's arbitrary revocation of that promise." (Dkt. No. 34, at 13).

"Promissory estoppel is a legal fiction designed to substitute for contractual consideration where one party relied on another's promise without having entered into an enforceable contract." *Drummond v. Akselrad*, No. 23-CV-179, 2023 WL 3173780, at *11, 2023 U.S. Dist. LEXIS 75793, at *36 (S.D.N.Y. May 1, 2023) (quoting *Bader v. Wells Fargo Home Mortg. Inc.*, 773 F. Supp. 2d 397, 414 (S.D.N.Y. 2011)). Under New York law, "[a] plaintiff may establish promissory estoppel through proving three elements: (1) the defendant's "clear and unambiguous promise"; (2) upon which the plaintiff reasonably relied; (3) to [their] detriment." *Ford v. Rensselaer Polytechnic Inst.*, 507 F. Supp. 3d 406, 421 (N.D.N.Y. 2020) (quoting *NRP Holdings LLC v. City of Buffalo*, 916 F.3d 177, 202 (2d Cir. 2019)). "A clear and unambiguous promise need not take any prescribed form." *See Drummond*, 2023 WL 3173780, at *11, 2023 U.S. Dist. LEXIS 75793, at *38-39) (collecting cases).

Here again, while the Court has doubts as to the viability of Plaintiff's promissory estoppel claim, Defendants base their arguments on a controverted reading of Plaintiff's submissions. First, Defendants argue that Plaintiff "fails to allege who made the promise and what the details of the promise were[.]" (Dkt. No. 31-6, at 28). But Plaintiff attached to his original complaint a copy of an email exchange between himself and a secretary for Copenhagen Central School, which he alleges is a "promise" to permit Plaintiff access to the school on January 13, 2025. (*See* Dkt. Nos. 1, at 12-14; 16, at 8; 34, at 13). Defendants also argue that "permission was given to the organization known as the Youth of Lewis County[,]" not to Plaintiff "personally." (Dkt. No. 31-6, at 28-29). However, Defendants cite to nothing in the Complaint or in Plaintiff's submissions that supports this assertion, and the email exchange appears to indicate Plaintiff himself was granted permission to visit. (*See* Dkt. No. 1, at 13-14 (greeting Plaintiff by his first name and reminding him "[t]here will be a table and chairs set up

for you" and that he would need to sign in and get visitor pass)). Finally, Defendants contend that "no promise" was made, "only permission granted" in the form of "a license to come onto property." (Dkt. No. 31-6, at 29). Yet Defendants have cited no applicable caselaw supporting their assertion that this was insufficient to constitute a promise. (*See* Dkt. No. 31-6, at 29). Having challenged only the sufficiency of the allegation of a promise, Defendants' motion to dismiss is therefore denied as to Plaintiff's promissory estoppel claim.

###    D.    Leave to Amend

Under Federal Rule of Civil Procedure 15(a)(2) a court should freely give leave to amend "when justice so requires." *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). Under Rule 15(a), absent certain circumstances not at play here, a party may amend its pleading only with the opposing party's written consent or the court's leave. *See* Fed. R. Civ. P. 15(a)(1)–(2). "Generally, leave to amend should be freely given, and a pro se litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Matima v. Celli*, 228 F.3d 68, 81 (2d Cir. 2000). But a court may, in its discretion, deny leave to amend "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, 66 F.4th 77, 90 (2d Cir. 2023) (quoting *Bensch v. Est. of Umar*, 2 F.4th 70, 81 (2d Cir. 2021).

Here, Plaintiff has already amended the complaint once, but that was before a ruling detailing the deficiencies in the allegations. In his response memorandum, Plaintiff asserted that he would "amend the complaint to plead with greater particularity" if the Court found the defamation claim insufficient. The Court will grant Plaintiff leave to amend. If he seeks to file a Second Amended Complaint, he must do so within thirty days. Plaintiff is advised that any such

Second Amended Complaint will replace the existing complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (internal quotation marks omitted)). The Court reminds Plaintiff that any exhibits Plaintiff wishes the Court to consider going forward must be attached to any Second Amended Complaint. This means that his previous complaints and other filings will no longer be the operative documents containing their pleadings and exhibits— everything that is essential must be contained in or attached to the Second Amended Complaint.

### E.    Motion to Appoint Counsel

Plaintiff requests the appointment of a pro bono attorney "due to [his] status as a college student living independently," with a full-time job that pays $16.50 an hour. (Dkt. No. 59, at 1). Plaintiff notes that he "and those close to [him] lack any financial resources to support [him]." (*Id.*). Plaintiff has also submitted a list of attorneys and firms he has contacted in an effort to obtain pro bono counsel. (*See id.* at 1-6).

Plaintiffs bringing civil actions have no constitutional right to the appointment of counsel. *See, e.g., United States v. Coven*, 662 F.2d 162, 176 (2d Cir. 1981). However, pursuant to 28 U.S.C. § 1915(e), the court may request an attorney to represent an indigent party. 28 U.S.C. § 1915(e)(1) (authorizing the court to "request an attorney to represent any person unable to afford counsel"). Courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party. *Hendricks v. Coughlin*, 114 F.3d 390, 392-93 (2d Cir. 1997). Instead, a number of factors must be carefully considered by the court in ruling upon such a motion:

> [The Court] should first determine whether the indigent's position seems likely to be of substance. If the claim meets this threshold requirement, the court should then consider the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994) (quoting *Hodge v. Police Officers*, 802 F.2d 58, 61-62 (2d Cir. 1986)) (internal quotation marks omitted). This is not to say that all, or indeed any, of these factors are controlling in a particular case; rather, each case must be decided on its own facts. *See Velasquez v. O'Keefe*, 899 F. Supp. 972, 974 (N.D.N.Y. Oct. 16, 1995) (citing *Hodge*, 802 F.2d at 61). The Court must consider the issue of appointment carefully because "every assignment of a volunteer lawyer to an undeserving client deprives society of a volunteer lawyer available for a deserving cause." *Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170, 172 (2d Cir. 1989).

At this preliminary stage, the Court is unable to determine whether Plaintiff meets the threshold requirement that at least some aspects of his claim are "likely to be of substance." *See Horowitz*, 28 F.3d at 1341. Moreover, Plaintiff has thus far been able to adequately litigate this case on his own. The Court is not aware of any special reason why appointment of counsel in this case is warranted at this time. And the Court is also mindful of the scarcity of volunteer lawyers and the need to allocate that resource with the utmost care. *See Cooper*, 877 F.2d at 172. Therefore, Plaintiff's motion for the appointment of counsel is denied without prejudice.

## V.    CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 31) is **GRANTED** as to Plaintiff's procedural due process and equal protection claims, Plaintiff's claims under 42 U.S.C.

§ 1983 against the Copenhagen Central School District, and as to Plaintiff's state law claims for defamation, intentional infliction of emotional distress, and retaliation under New York's whistleblower protection laws, and all of those claims are **DISMISSED**; and it is further

ORDERED that Defendants' motion to dismiss (Dkt. No. 31) is otherwise **DENIED**; and it is further

ORDERED that Plaintiff's motion for leave to file supplemental evidence (Dkt. No. 65) is **DENIED**; and it is further

ORDERED that Plaintiff's motion to appoint counsel (Dkt. No. 59) is **DENIED** without prejudice; and it is further

ORDERED that any amended complaint must be filed within thirty (30) days of the date of this Order; and it is further

ORDERED that if Plaintiff does not file a Second Amended Complaint within thirty (30) days, Defendants are directed to file an answer to the First Amended Complaint in accordance with the Federal Rules of Civil Procedure.

**IT IS SO ORDERED.**

Dated: <u>January 8, 2026</u>
       Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge