# Exhibit K

3410

# COPENHAGEN CENTRAL SCHOOL DISTRICT
## CODE OF CONDUCT

## TABLE OF CONTENTS

| | | PAGE |
|---|---|---|
| I. | Introduction | 2 |
| II. | Definitions | 2 |
| III. | Student Rights and Responsibilities | 4 |
| IV. | Essential Partners | 5 |
| V. | Student Dress Code | 10 |
| VI. | Prohibited Student Conduct | 11 |
| VII. | Violations of the Code of Conduct | 12 |
| VIII. | Reporting Violations | 17 |
| IX. | Visitors to the School | 18 |
| X. | Disciplinary Penalties, Procedures and Referrals | 18 |
| XI. | Alternative Instruction | 27 |
| XII. | Discipline of Students with Disabilities | 28 |
| XIII. | Corporal Punishment | 36 |
| XIV. | Student Searches and Interrogations | 36 |
| XV. | Public Conduct on School Property | 39 |
| XVI. | Dissemination and Review | 42 |

The—A Principal or his/her designee must notify the appropriate local law enforcement agency of those code violations that constitute a crime and substantially affect the order or security of a school as soon as practical, but in no event later than the close of business the day the—a Principal or his/her designee learns of the violation. The notification may be made by telephone, followed by a letter mailed on same day as the telephone call is made. The notification must identify the student and explain the conduct that violated the code of conduct and constituted a crime.

## IX. VISITORS TO THE SCHOOLS

The Board encourages parents and other district citizens to visit the district's schools and classrooms to observe the work of students, teachers and other staff. Since schools are a place of work and learning, however, certain limits must be set for such visits. The—A Principal or his or her designee is responsible for all persons in the building and on the grounds. For these reasons, the following rules apply to visitors to the schools:

1. Anyone who is not a regular staff member or student of the school will be considered a visitor.

2. All visitors to the school must report to the first office by the Main Entrance upon arrival at the school. There they will be required to sign the visitor's register.

3. Visitors attending school functions that are open to the public, such as parent-teacher organization meetings or public gatherings are not required to register.

4. Parents or citizens who wish to observe a classroom while school is in session are required to arrange such visits in advance with the classroom teacher(s), so that class disruption is kept to a minimum. **Visitors may observe/shadow for a maximum of one half of the school day.**

5. Teachers are expected not to take class time to discuss individual matters with visitors.

6. Any unauthorized person on school property will be reported to the—a Principal or his or her designee. Unauthorized persons will be asked to leave. The police may be called if the situation warrants.

7. All visitors are expected to abide by the rules for public conduct on school property contained in this code of conduct.

## X. DISCIPLINARY PENALTIES, PROCEDURES AND REFERRALS

Discipline is most effective when it deals directly with the problem at the time and place it occurs, and in a way that students view as fair and impartial. School personnel who interact with students are expected to use disciplinary action only when necessary and to place emphasis on the students' ability to grow in self- discipline.

Disciplinary action, when necessary, will be firm, fair and consistent so as to be the most effective in changing student behavior. In determining the appropriate disciplinary action, school personnel authorized to impose disciplinary penalties will consider the following:

1. The student's age.
2. The nature of the offense and the circumstances which led to the offense.
3. The student's prior disciplinary record.
4. The effectiveness of other forms of discipline.
5. Information from parents, teachers and/or others, as appropriate.
6. Other extenuating circumstances.

As a general rule, discipline will be progressive. This means that a student's first violation will usually merit a lighter penalty than subsequent violations.

If the conduct of a student is related to a disability or suspected disability, the student shall be referred to the Committee on Special Education and discipline, if warranted, shall be administered consistent with the separate requirements of this code of conduct for disciplining students with a disability or presumed to have a disability. A student identified as having a disability shall not be disciplined for behavior related to his/her disability.

## A. Penalties

Students who are found to have violated the district's code of conduct may be subject to the following penalties, either alone or in combination. The school personnel identified after each penalty are authorized to impose that penalty, consistent with the student's right to due process.

1. Oral warning – any member of the district staff
2. Written warning – bus drivers, hall and lunch monitors, coaches, teacher aides/assistants, guidance counselors, teachers, Principal, Superintendent
3. Written notification to parent – bus driver, hall and lunch monitors, coaches, guidance counselors, teachers, Principal, Superintendent
4. Detention – teachers, Principal, Superintendent
5. Suspension from transportation – Director of Transportation, Principal, Superintendent
6. Suspension from athletic participation – coaches, Principal, Superintendent
7. Suspension from social or extracurricular activities – activity director, Principal, Superintendent
8. Suspension of other privileges – Principal, Superintendent
9. In-school suspension – Principal, Superintendent
10. Removal from classroom by teacher – teachers, Principal
11. Short-term (five days or less) suspension from school – Principal,

Superintendent, Board

12. Long-term (more than five days) suspension from school – Superintendent, Board
13. Permanent suspension from school – Superintendent, Board
14. Referral to the Student Assistance Program (SAP) for tobacco or alcohol violations – Principal, Superintendent, Athletic Director

## B. Procedures

The amount of due process a student is entitled to receive before a penalty is imposed depends on the penalty being imposed. In all cases, regardless of the penalty imposed, the school personnel authorized to impose the penalty must inform the student of the alleged misconduct and must investigate, to the extent necessary, the facts surrounding the alleged misconduct. All students will have an opportunity to present their version of the facts to the school personnel imposing the disciplinary penalty in connection with the imposition of the penalty.

Students who are to be given penalties other than an oral warning, written warning or written notification to their parents are entitled to additional rights before the penalty is imposed. These additional rights are explained below.

### 1. Detention

Detention is a form of discipline, which may be used by administrators and teachers. A teacher may recommend to administration a student to remain after school for behavioral reasons or for failure to submit required assignments. Assignments to this detention is made only by the administration. A student is required to attend such detention when directed to do so. The detention shall be recommended to the office on a written referral.

### 2. Suspension from transportation

If a student does not conduct himself/herself properly on a bus, the bus driver is expected to bring such misconduct to the a Principal's attention. Students who become a serious disciplinary problem may have their riding privileges suspended by the a Principal or the Superintendent or their designees.

In such cases, the student's parent will become responsible for seeing that his or her child gets to and from school safely. Should the suspension from transportation amount to a suspension from attendance, the district will make appropriate arrangements to provide for the student's education.

A student subjected to a suspension from transportation is not entitled to a full hearing pursuant to Education Law §3214. However, the student and the student's parent will be provided with a reasonable opportunity for an informal conference with the a Principal or the a Principal's designee to discuss the conduct and the penalty involved.

### 3. Suspension from athletic participation, extra-curricular activities and other privileges

A student subjected to a suspension from athletic participation, extra-curricular activities or other privileges is not entitled to a full hearing pursuant to Education Law §3214. However, the student and the student's parent will be provided with a reasonable opportunity for an informal conference with the district official imposing the suspension to discuss the conduct and the penalty involved.

### 4. In-school Suspension

The Board recognizes the school must balance the need of students to attend school and the need for order in the classroom to establish an environment conducive to learning. As such, the Board authorizes Principals and the Superintendent to place students who would otherwise be suspended from school as the result of a code of conduct violation in "in-school suspension."

A student subjected to an in-school suspension is not entitled to a full hearing pursuant to Education Law §3214. However, the student and the student's parent will be provided with a reasonable opportunity for an informal conference with the district official imposing the in-school suspension to discuss the conduct and the penalty involved.

### 5. Teacher Disciplinary Removal of Disruptive Students

A student's behavior can affect a teacher's ability to teach and can make it difficult for other students in the classroom to learn. In most instances the classroom teacher can control a student's behavior and maintain or restore control over the classroom by using good classroom management techniques. These techniques may include practices that involve the teacher directing a student to briefly leave the classroom to give the student an opportunity to regain his or her composure and self-control in an alternative setting. Such practices may include, but are not limited to: (1) short-term "time out" in an elementary classroom or in an administrator's office; (2) sending a student into the hallway briefly; (3) sending a student to ~~the~~ a Principal's office for the remainder of the class time only; or (4) sending a student to a guidance counselor or other district staff member for counseling. Time-honored classroom management techniques such as these do not constitute disciplinary removals for purposes of this code.

On occasion, a student's behavior may become disruptive. For purposes of this code of conduct, a disruptive student is a student who is substantially disruptive of the educational process or substantially interferes with the teacher's authority over the classroom. A substantial disruption of the educational process or substantial interference with a teacher's authority occurs when a student demonstrates a persistent unwillingness to comply with the teacher's instructions or repeatedly violates the teacher's classroom behavior rules

21

A classroom teacher may remove a disruptive student from class for one day. The removal from class applies to the class of the removing teacher only.

If the disruptive student does not pose a danger or ongoing threat of disruption to the academic process, the teacher must provide the student with an explanation for why he or she is being removed and an opportunity to explain his or her version of the relevant events before the student is removed. Only after the informal discussion may a teacher remove a student from class.

If the student poses a danger or ongoing threat of disruption, the teacher may order the student to be removed immediately. The teacher must, however, explain to the student why he or she was removed from the classroom and give the student a chance to present his or her version of the relevant events within 24-hours.

The teacher must complete a district-established disciplinary removal form and meet with ~~the~~ a Principal or his or her designee as soon as possible, but no later than the end of the school day, to explain the circumstances of the removal and to present the removal form. If ~~the~~ a Principal or designee is not available by the end of the same school day, the teacher must leave the form with the secretary and meet with ~~the~~ a Principal or designee prior to the beginning of classes on the next school day.

Within 24 hours after the student's removal, ~~the~~ a Principal or another district administrator designated by ~~the~~ a Principal must notify the student's parent, in writing, that the student has been removed from class and why. The notice must also inform the parent that he or she has the right, upon request, to meet informally with ~~the~~ a Principal or ~~the~~ a Principal's designee to discuss the reasons for the removal.

The written notice must be provided by personal delivery, express mail delivery, or some other means that is reasonably calculated to assure receipt of the notice within 24 hours of the student's removal at the last known address for the parent. Where possible, notice should also be provided by telephone if the school has been provided with a telephone number(s) for the purpose of contacting parents.

The teacher who ordered the removal may be required to attend the informal conference.

If at the informal meeting the student denies the charges, ~~the~~ a Principal or ~~the~~ a Principal's designee must explain why the student was removed and give the student and the student's parents a chance to present the student's version of the relevant events. The informal meeting must be held within 48 hours of the student's removal. The timing of the informal meeting may be extended by mutual agreement of the parent and Principal.

~~The~~ A Principal or ~~the~~ a Principal's designee may overturn the removal of the student from class if ~~the~~ a Principal finds any one of the following:

1. The charges against the student are not supported by substantial evidence.
2. The student's removal is otherwise in violation of law, including the district's code of conduct.
3. The conduct warrants suspension from school pursuant to Education Law §3214 and a suspension will be imposed.

~~The~~ A Principal or his/her designee may overturn a removal at any point between receiving the referral form issued by the teacher and the close of business on the day following the 48-hour period for the informal conference, if a conference is requested. No student removed from the classroom by the classroom teacher will be permitted to return to the classroom until ~~the~~ a Principal makes a final determination, or the period of removal expires, whichever is less.

Any disruptive student removed from the classroom by the classroom teacher shall be offered continued educational programming and activities until he or she is permitted to return to the classroom.

Each teacher must keep a complete log (on a district provided form) for all cases of removal of students from his/her class. ~~The~~ A Principal must keep a log of all removals of students from class.

Removal of a student with a disability, under certain circumstances, may constitute a change in the student's placement. Accordingly, no teacher may remove a student with a disability from his or her class until he or she has verified with ~~the~~ a Principal or the chairperson of the Committee on Special Education that the removal will not violate the student's rights under state or federal law or regulation.

### 6. Suspension from School

Suspension from school is a severe penalty, which may be imposed only upon students who are insubordinate, disorderly, violent or disruptive, or whose conduct otherwise endangers the safety, morals, health or welfare of others.

The Board retains its authority to suspend students, but places primary responsibility for the suspension of students with the Superintendent and ~~the~~ a Principal.

Any staff member may recommend to the Superintendent or ~~the~~ a Principal that a student be suspended. All staff members must immediately report and refer a violent student to ~~the~~ a Principal or the Superintendent for a violation of the code of conduct. All recommendations and referrals shall be made in writing unless the conditions underlying the recommendation or referral warrant immediate attention. In such cases a written report is to be prepared as soon as possible by the staff member recommending the suspension.

The Superintendent or Principals, upon receiving a recommendation or referral for suspension or when processing a case for suspension, shall gather the

facts relevant to the matter and record them for subsequent presentation, if necessary.

a. Short term (five days or less) Suspension from School

When the Superintendent or Principals (referred to as the "suspending authority") proposes to suspend a student charged with misconduct for five days or less pursuant to Education Law §3214(3), the suspending authority must immediately notify the student orally. If the student denies the misconduct, the suspending authority must provide an explanation of the basis for the proposed suspension. The suspending authority must also notify the student's parents in writing that the student may be suspended from school. The written notice must be provided by personal delivery, express mail delivery, or some other means that is reasonably calculated to assure receipt of the notice within 24 hours of the decision to propose suspension at the last known address for the parents. Where possible, notice should also be provided by telephone if the school has been provided with a telephone number(s) for the purpose of contacting the parents.

The notice shall provide a description of the charges against the student and the incident for which suspension is proposed and shall inform the parents of the right to request an immediate informal conference with the a Principal. Both the notice and informal conference shall be in the dominant language or mode of communication used by the parents. At the conference, the parents shall be permitted to ask questions of complaining witnesses under such procedures as the a Principal may establish.

The notice and opportunity for an informal conference shall take place before the student is suspended unless the student's presence in school poses a continuing danger to persons or property or an ongoing threat of disruption to the academic process. If the student's presence does pose such a danger or threat of disruption, the notice and opportunity for an informal conference shall take place as soon after the suspension as is reasonably practicable.

After the conference, the a Principal shall promptly advise the parents in writing of his or her decision. The A Principal shall advise the parents that if they are not satisfied with the decision and wish to pursue the matter, they must file a written appeal to the Superintendent within five business days, unless they can show extraordinary circumstances precluding them from doing so. The Superintendent shall issue a written decision regarding the appeal within 10 business days of receiving the appeal. If the parents are not satisfied with the Superintendent's decision, they must file a written appeal to the Board of education with the District Clerk within 10 business days of the date of the Superintendent's decision, unless they can show extraordinary circumstances precluding them from doing so. Only final decisions of the Board may be appealed to the Commissioner of Education within 30 days of the decision.

b. Long term (more than five days) Suspension from

School

When the Superintendent determines that a suspension for more than five days may be warranted, he or she shall give reasonable notice to the student and the student's parents of their right to a fair hearing. At the hearing the student shall have the right to be represented by counsel, the right to question witnesses against him or her and the right to present witnesses and other evidence on his or her behalf.

The Superintendent shall personally hear and determine the proceeding or may, in his or her discretion, designate a hearing officer to conduct the hearing. The hearing officer shall be authorized to administer oaths and to issue subpoenas in conjunction with the proceeding before him or her. A record of the hearing shall be maintained, but no stenographic transcript shall be required. A tape recording shall be deemed a satisfactory record. The hearing officer shall make findings of fact and recommendations as to the appropriate measure of discipline to the Superintendent. The report of the hearing officer shall be advisory only, and the Superintendent may accept all or any part thereof.

An appeal of the decision of the Superintendent may be made to the Board that will make its decision based solely upon the record before it. All appeals to the Board must be in writing and submitted to the district clerk within 10 business days of the date of the Superintendent's decision, unless the parents can show that extraordinary circumstances precluded them from doing so. The Board may adopt in whole or in part the decision of the Superintendent. Final decisions of the Board may be appealed to the Commissioner of Education within 30 days of the decision.

> c.  Permanent suspension

Permanent suspension is reserved for extraordinary circumstances such as where a student's conduct poses a life-threatening danger to the safety and well-being of other students, school personnel or any other person lawfully on school property or attending a school function.

> d.  Procedure After Suspension

The Board may condition a student's early return from a suspension on the student's voluntary participation in counseling or specialized classes, such as anger management or dispute resolution. The Board retains discretion in offering this opportunity. If and when the student and/or parent/guardian agrees to this option, the terms and conditions shall be specified in writing.

## C.  Minimum Periods of Suspension

> 1.  Students who bring a weapon to school

Any student, other than a student with a disability, found guilty of bringing a weapon onto school property will be subject to suspension from school for at least

one calendar year. Before being suspended, the student will have an opportunity for a hearing pursuant to Education Law §3214. The Superintendent has the authority to modify the one-year suspension on a case-by-case basis. In deciding whether to modify the penalty, the Superintendent may consider the following:

    (a)    The student's age.

    (b)    The student's grade in school.

    (c)    The student's prior disciplinary record.

    (d)    The Superintendent's belief that other forms of discipline may be more effective.

    (e)    Input from parents, teachers and/or others.

    (f)    Other extenuating circumstances.

A student with a disability may be suspended only in accordance with the requirements of state and federal law.

2.    Students who commit violent acts other than bringing a weapon to school

Any student, other than a student with a disability, who is found to have committed a violent act, other than bringing a weapon onto school property, shall be subject to suspension from school for at least five days. If the proposed penalty is the minimum five-day suspension, the student and the student's parent will be given the same notice and opportunity for an informal conference given to all students subject to a short-term suspension. If the proposed penalty exceeds the minimum five-day suspension, the student and the student's parent will be given the same notice and opportunity for a hearing given to all students subject to a long- term suspension. The Superintendent has the authority to modify the minimum five- day suspension on a case-by-case basis. In deciding whether to modify the penalty, the Superintendent may consider the same factors considered in modifying a one- year suspension for possessing a weapon.

3.    Students who are repeatedly substantially disruptive of the educational process or repeatedly substantially interferes with the teacher's authority over the classroom

Any student, other than a student with a disability, who repeatedly is substantially disruptive of the educational process or substantially interferes with the teacher's authority over the classroom will be suspended from school for at least five days. For purposes of this code of conduct, "repeatedly is substantially disruptive" means engaging in conduct that results in the student being removed from the classroom by teacher(s) pursuant to Education Law § 3214 (3-a) and this code on four or more occasions during a semester, or three or more occasions during a trimester. If the proposed penalty is the minimum five-day suspension, the student and the student's parent will be given the same notice and opportunity for an informal conference given to all students subject to a short-term suspension. If the proposed penalty exceeds the minimum five-day suspension, the student and the

student's parent will be given the same notice and opportunity for a hearing given to all students subject to a long-term suspension. The Superintendent has the authority to modify the minimum five-day suspension on a case-by-case basis. In deciding whether to modify the penalty, the Superintendent may consider the same factors considered in modifying a one-year suspension for possessing a weapon.

**D.    Referrals**

1.    Counseling

~~The~~ A Principal's Office shall handle all referrals of students to counseling.

2.    PINS Petitions

The district may file a PINS (person in need of supervision) petition in Family Court on any student under the age of 18 who demonstrates that he or she requires supervision and treatment by:

a.    Being habitually truant and not attending school as required by part one of Article 65 of the Education Law.

b.    Engaging in an ongoing or continual course of conduct which makes the student ungovernable, or habitually disobedient and beyond the lawful control of the school.

c.    Knowingly and unlawfully possesses marijuana in violation of Penal Law § 221.05. A single violation of § 221.05 will be a sufficient basis for filing a PINS petition.

3.    Juvenile Delinquents and Juvenile Offenders

The Superintendent is required to refer the following students to the County Attorney for a juvenile delinquency proceeding before the Family Court:

a.    Any student under the age of 16 who is found to have brought a weapon to school, or

b.    Any student 14 or 15 years old who qualifies for juvenile offender status under the Criminal Procedure Law § 1.20 (42).

The Superintendent is required to refer students age 16 and older or any student 14 or 15 years old who qualifies for juvenile offender status to the appropriate law enforcement authorities.

**XI.    ALTERNATIVE INSTRUCTION**

When a student of any age is removed from class by a teacher or a student of compulsory attendance age is suspended from school pursuant to Education Law §3214, the district will take immediate steps to provide alternative means of instruction for the student.

## XII. DISCIPLINE OF STUDENTS WITH DISABILITIES

The Board of Education recognizes that it may be necessary to suspend, remove or otherwise discipline students with disabilities who violate the district's student code of conduct, and/or to temporarily remove a student with disabilities from his or her current placement because maintaining the student in that placement is substantially likely to result in injury to the student or to others. The Board also recognizes that students with disabilities deemed eligible for special education services under the IDEA and Article 89 of New York's Education Law enjoy certain procedural protections that school authorities must observe when they decide to suspend or remove them. Under certain conditions those protections extend, as well, to students not currently deemed to be a student with a disability but determined to be a student presumed to have a disability for discipline purposes.

Therefore, the Board is committed to ensuring that the district follows suspension and removal procedures that are consistent with those protections. The code of conduct for students is intended to afford students with disabilities and students presumed to have a disability for discipline purposes the express rights they enjoy under applicable law and regulations.

*Definitions*

For purposes of this portion of the code of conduct, and consistent with applicable law and regulations, the following definitions will apply:

1. *Behavioral intervention plan* (BIP) means a plan that is based on the results of a functional behavioral assessment and that, at a minimum, includes a description of the problem behavior, global and specific hypotheses as to why the problem behavior occurs, and intervention strategies that include positive behavioral supports and services to address the behavior.

2. *Controlled substance* means a drug or other substance abuse identified under schedule I, II, III, IV, or V in section 202(c) of the Controlled Substances Act (21 USC § 812(c)).

3. *Disciplinary change in placement* means a suspension or removal from a student's current educational placement that is either:

    a. For more than 10 consecutive school days; or
    b. For a period of 10 consecutive school days or less if the student is subjected to a series of suspensions or removals that constitute a pattern because they cumulate to more than 10 school days in a school year, because the student's behavior is substantially similar

to the student's behavior in previous incidents that resulted in the series of removals, and because of such additional factors as the length of each suspension or removal, the total amount of time the student has been removed and the proximity of the suspensions or removals to one another.

4. *Illegal drug* means a controlled substance, but does not include a controlled substance legally possessed or used under the supervision of a licensed health-care professional, or a substance that is otherwise legally possessed or used under the authority of the Controlled Substances Act or under any other provision of federal law.

5. *Interim alternative educational setting* (IAES) means a temporary educational placement, other than the student's current placement at the time the behavior precipitating the IAES placement occurred. An IAES must allow a student to continue to receive educational services that enable him or her to continue to participate in the general curriculum and progress toward meeting the goals set out in the student's individualized education program; as well as to receive, as appropriate, a functional behavioral assessment and behavioral intervention services and modifications designed to address the behavior violation so that it does not recur.

6. *Manifestation review* means a review of the relationship between the student's disability and the behavior subject to disciplinary action required when the disciplinary action results in a disciplinary change of placement, and conducted in accordance with requirements set forth later in this policy.

7. *Manifestation team* means a district representative knowledgeable about the student and the interpretation of information about child behavior, the parent, and relevant members of the committee on special education as determined by the parent and the district.

8. *Removal* means a removal of a student with a disability for disciplinary reasons from his or her current educational placement, other than a suspension; and a change in the placement of a student with a disability to an IAES.

9. *School day* means any day, including a partial day, that students are in attendance at school for instructional purposes.

10. *Serious bodily injury* means bodily injury which involves a substantial risk of death, extreme physical pain, protracted obvious disfigurement or protracted loss or impairment of the function of a bodily member, organ or mental faculty.

11. *Student presumed to have a disability for discipline purposes* means a student who, under the conditions set forth later in this policy, the district is deemed to have had knowledge was a student with a disability before the behavior that precipitated the disciplinary action.

12. *Suspension* means a suspension pursuant to §3214 of New York's Education Law.

13. *Weapon* means the same as the term "dangerous weapon" under 18 USC §930(g)(2) which includes a weapon, device, instrument, material or substance, animate or inanimate, that is used for, or is readily capable of

causing death or serious bodily injury, except a pocket knife with a blade of less than two and one-half inches in length.

*Authority of School Personnel to Suspend or Remove Students with Disabilities*

The Board, District Superintendent, Superintendent of Schools or a ~~Building~~ Principal with authority to suspend students under the Education Law may order the placement of a student with a disability into an IAES, another setting or suspension for a period not to exceed five consecutive school days.

The Superintendent may, directly or upon the recommendation of a designated hearing officer, order the placement of a student with a disability into an IAES, another setting or suspension for a period not to exceed ten consecutive school days inclusive of any period in which the student has been suspended or removed for the same behavior pursuant to the above paragraph, if the Superintendent determines that the student's behavior warrants the suspension. The Superintendent also may order additional suspensions of not more than ten consecutive school days in the same school year for separate incidents of misconduct, as long as the suspensions do not constitute a disciplinary change of placement.

In addition, the Superintendent may order the placement of a student with a disability into an IAES, another setting or suspension for a period in excess of ten consecutive school days if the manifestation team determines that the student's behavior was not a manifestation of the student's disability. In such an instance, the Superintendent may discipline the student in the same manner and for the same duration as a non-disabled student.

Furthermore, the Superintendent may, directly or upon the recommendation of a designated hearing officer, order the placement of a student with a disability to an IAES to be determined by the committee on special education for a period of up to 45 school days if the student either:

1.    Carries or possesses a weapon to or at school, on school premises or to a school function, or
2.    Knowingly possesses or uses illegal drugs or sells or solicits the sale of a controlled substance while at school, on school premises or at a school function under the district's jurisdiction, or
3.    Has inflicted serious bodily injury upon another person while at school, on school premises or at a school function under the district's jurisdiction.

The Superintendent may order the placement of a student with a disability to an IAES under such circumstances, whether or not the student's behavior is a manifestation of the student's disability. However, the committee on special education will determine the IAES.

*Procedures for the Suspension or Removal of Students with Disabilities by School*

*Personnel*

1. In cases involving the suspension or removal of a student with a disability for a period of five consecutive school days or less, the student's parents or persons in parental relation to the student will be notified of the suspension and given an opportunity for an informal conference in accordance with the same procedures that apply to such short term suspensions of non-disabled students.

2. The suspension of students with disabilities for a period in excess of five school days will be subject to the same due process procedures applicable to non-disabled students, except that the student disciplinary hearing conducted by the Superintendent or a designated hearing officer shall be bifurcated into a guilt phase and a penalty phase. Upon a finding of guilt, the Superintendent or the designated hearing officer will await notification of the determination by the manifestation team as to whether the student's behavior was a manifestation of his or her disability. The penalty phase of the hearing may proceed after receipt of that notification. If the manifestation team determined that the behavior was not a manifestation of the student's disability, the student may be disciplined in the same manner as a non-disabled student, except that he or she will continue to receive services as set forth below. However, if the behavior was deemed a manifestation of the student's disability, the hearing will be dismissed, unless the behavior involved concerned weapons, illegal drugs or controlled substances, or the infliction of serious bodily injury, in which case the student may still be placed in an IAES.

*Limitation on Authority of School Personnel to Suspend or Remove Students with Disabilities*

The imposition of a suspension or removal by authorized school personnel may not result in a disciplinary change of placement of a student with a disability that is based on a pattern of suspensions or removals as set forth above in the *Definitions* section of this policy, unless:

1. The manifestation team determines that the student's behavior was not a manifestation of the student's disability, or
2. The student is removed to an IAES for behavior involving weapons, illegal drugs or controlled substances, or the infliction of serious bodily injury as set forth above.

School personnel will consider any unique circumstances on a case-by-case basis when determining whether a disciplinary change in placement is appropriate for a student with a disability who violates the district's code of conduct.

In addition, school personnel may not suspend or remove a disability in excess of the amount of time that a non-disabled student would be suspended for the same behavior.

*Parental Notification of a Disciplinary Change of Placement*

The district will provide the parents of a student with a disability notice of any decision to make a removal that constitutes a disciplinary change of placement because of a violation of the student code of conduct. Such notice will be accompanied by a copy of the procedural safeguards notice.

*Authority of an Impartial Hearing Officer to Remove a Student with a Disability*

An impartial hearing officer may order the placement of a student with a disability to an IAES for up to 45 school days at a time if he or she determines that maintaining the current placement of the student is substantially likely to result in injury to the student or to others. This authority applies whether or not the student's behavior is a manifestation of the student's disability.

*Manifestation Review*

A review of the relationship between a student's disability and the behavior subject to disciplinary action to determine if the conduct is a manifestation of the student's disability will be made by the manifestation team immediately, if possible, but in no case later than 10 school days after a decision is made by:

1. The Superintendent to change the placement of a student to an IAES;
2. An impartial hearing officer to place a student in an IAES; or
3. The Board, the Superintendent, or a ~~Building~~ Principal to impose a suspension that constitutes a disciplinary change in placement.

The manifestation team must determine that the student's conduct was a manifestation of the student's disability if it concludes that the conduct in question was either:

1. Caused by or had a direct or substantial relationship to the student's disability, or
2. The direct result of the district's failure to implement the student's individualized education program.

The manifestation team must base its determination on a review all relevant information in the student's file including the student's individualized education program, any teacher observations, and any relevant information provided by the parents.

If the manifestation team determines that the student's conduct is a manifestation of the student's disability, the district will:

1. Have the committee on special education conduct a functional behavioral assessment of the student and implement a behavioral intervention plan,

unless the district had already done so prior to the behavior that resulted in the disciplinary change of placement occurred. However, if the student already has a behavioral intervention plan, the CSE will review the plan and its implementation, and modify it as necessary to address the behavior.

2. Return the student to the placement from which he or she was removed, unless the change in placement was to an IAES for conduct involving weapons, illegal drugs or controlled substances or the infliction of serious bodily injury, or the parents and the district agree to a change in placement as part of the modification of the behavioral intervention plan.

If the manifestation team determines that the conduct in question was the direct result of the district's failure to implement the student's individualized education program, the district will take immediate steps to remedy those deficiencies.

*Services for Students with Disabilities during Periods of Suspension or Removal*

Students with disabilities who are suspended or removed from their current educational setting in accordance with the provisions of this policy and applicable law and regulation will continue to receive services as follows:

1. During suspensions or removals of up to 10 school days in a school year' that do not constitute a disciplinary change in placement, the district will provide alternative instruction to students with disabilities of compulsory attendance age on the same basis as non-disabled students. Students with disabilities who are not of compulsory attendance age will receive services during such periods of suspension or removal only to the same extent as non-disabled students of the same age would if similarly suspended.

2. During subsequent suspensions or removals of up to 10 school days that in the aggregate total more than 10 school days in a school year but do not constitute a disciplinary change in placement, the district will provide students with disabilities services necessary to enable them to continue to participate in the general education curriculum and to progress toward meeting the goals set out in their respective individualized education program. School personnel, in consultation with at least one of the student's teachers, will determine the extent to which services are needed to comply with this requirement.

In addition, during such periods of suspension or removal the district will also provide students with disabilities services necessary for them to receive, as appropriate, a functional behavioral assessment, and behavioral intervention services and modifications designed to address the behavior violation so that it does not recur.

3. During suspensions or removals in excess of 10 school days in a school year that constitute a disciplinary change in placement, including placement in

an IAES for behavior involving weapons, illegal drugs or controlled substances, or the infliction of serious bodily injury, the district will provide students with disabilities services necessary to enable them to continue to participate in the general curriculum, to progress toward meeting the goals set out in their respective individualized education program, and to receive, as appropriate, a functional behavioral assessment, and behavioral intervention services and modifications designed to address the behavior violation so it does not recur.

In such an instance, the committee on special education will determine the appropriate services to be provided.

*Students Presumed to Have a Disability for Discipline Purposes*

The parent of a student who is facing disciplinary action but who was not identified as a student with a disability at the time of misconduct has the right to invoke any of the protections set forth in this policy in accordance with applicable law and regulations, if the district is deemed to have had knowledge that the student was a student with a disability before the behavior precipitating disciplinary action occurred and the student is therefore a student presumed to have a disability for discipline purposes.

If it is claimed that the district had such knowledge, it will be the responsibility of the Superintendent, a ~~Building~~ Principal or other authorized school official imposing the suspension or removal in question for determining whether the student is a student presumed to have a disability for discipline purposes. The district will be deemed to have had such knowledge if:

1. The student's parent expressed concern in writing to supervisory or administrative personnel, or to a teacher of the student that the student is in need of special education. Such expression may be oral if the parent does not know how to write or has a disability that prevents a written statement; or
2. The student's parent has requested an evaluation of the student; or
3. A teacher of the student or other school personnel has expressed specific concerns about a pattern of behavior demonstrated by the student, directly to the district's director of special education or other supervisory personnel.

Nonetheless, a student will not be considered a student presumed to have a disability for discipline purposes if notwithstanding the district's receipt of information supporting a claim that it had knowledge the student has a disability,

1. The student's parent has not allowed an evaluation of the student; or
2. The student's parent has refused services; or
3. The District conducted an evaluation of the student and determined that the student is not a student with a disability.

If there is no basis for knowledge that the student is a student with a disability prior to taking disciplinary measures against the student, the student may be subjected to the same disciplinary measures as any other non-disabled student who engaged in comparable behaviors. However, if the district receives a request for an individual evaluation while the student is subjected to a disciplinary removal, the district will conduct an expedited evaluation of the student in accordance with applicable law and regulations. Until the expedited evaluation is completed, the student shall remain in the educational placement determined by the district which can include suspension.

*Expedited Due Process Hearings*

The district will arrange for an expedited due process hearing upon receipt of or filing of a due process complaint notice for such a hearing by:

1. The district to obtain an order of an impartial hearing officer placing a student with a disability in an IAES where school personnel maintain that it is dangerous for the student to be in his or her current educational placement;
2. The district during the pendency of due process hearings where school personnel maintain that it is dangerous for the student to be in his or her current educational placement during such proceedings;
3. The student's parent regarding a determination that the student's behavior was not a manifestation of the student's disability; or
4. The student's parent relating to any decision regarding placement, including but not limited to any decision to place the student in an IAES.

The district will arrange for, and an impartial hearing officer will conduct, an expedited due process hearing in accordance with the procedures established in Commissioner's regulations. Those procedures include but are not limited to convening a resolution meeting, and initiating and completing the hearing within the timelines specified in those regulations.

When an expedited due process hearing has been requested because of a disciplinary change in placement, a manifestation determination, or because the district believes that maintaining the student in the current placement is likely to result in injury to the student or others, the student will remain in the IAES pending the decision of the impartial hearing officer or until the expiration of the period of removal, whichever occurs first unless the student's parent and the district agree otherwise.

*Referral to Law Enforcement and Judicial Authorities*

Consistent with its authority under applicable law and regulations, the district will report a crime committed by a student with a disability to appropriate law enforcement and judicial authorities. In such an instance, The Superintendent will ensure that copies of the special education and disciplinary records of the student

are transmitted for consideration to the appropriate authorities to whom the crime is reported, to the extent that the transmission is permitted by the Family Educational Rights and Privacy Act (FERPA).

### XIII. CORPORAL PUNISHMENT

Corporal punishment is any act of physical force upon a student for the purpose of punishing that student. Corporal punishment of any student by any district employee is strictly forbidden.

However, in situations where alternative procedures and methods that do not involve the use of physical force cannot reasonably be used, reasonable physical force may be used to:

1. Protect oneself, another student, teacher or any person from physical injury.
2. Protect the property of the school or others.
3. Restrain or remove a student whose behavior interferes with the orderly exercise and performance of school district functions, powers and duties, if that student has refused to refrain from further disruptive acts.

The district will file all complaints about the use of corporal punishment with the Commissioner of Education in accordance with Commissioner's regulations.

### XIV. STUDENT SEARCHES AND INTERROGATIONS

The Board of Education is committed to ensuring an atmosphere on school property and at school functions that is safe and orderly. To achieve this kind of environment, any school official authorized to impose a disciplinary penalty on a student may question a student about an alleged violation of law or the district code of conduct. Students are not entitled to any sort of "Miranda"-type warning before being questioned by school officials, nor are school officials required to contact a student's parent before questioning the student. However, school officials will tell all students why they are being questioned.

In addition, the Board authorizes the Superintendent of Schools, a ~~Building~~ Principals, the school nurse and district security officials to conduct searches of students and their belongings if the authorized school official has reasonable suspicion to believe that the search will result in evidence that the student violated the law or the district code of conduct.

An authorized school official may conduct a search of a student's belongings that is minimally intrusive, such as touching the outside of a book bag, without reasonable suspicion, so long as the school official has a legitimate reason

for the very limited search.

An authorized school official may search a student or the student's belongings based upon information received from a reliable informant. Individuals, other than the district employees, will be considered reliable informants if they have previously supplied information that was accurate and verified, or they make an admission against their own interest, or they provide the same information that is received independently from other sources, or they appear to be credible and the information they are communicating relates to an immediate threat to safety. District employees will be considered reliable informants unless they are known to have previously supplied information that they knew was not accurate.

Before searching a student or the student's belongings, the authorized school official should attempt to get the student to admit that he or she possesses physical evidence that they violated the law or the district code, or get the student to voluntarily consent to the search. Searches will be limited to the extent necessary to locate the evidence sought.

Whenever practicable, searches will be conducted in the privacy of administrative offices and students will be present when their possessions are being searched.

### A.            Student Lockers, Desks and other School Storage Places

The rules in this code of conduct regarding searches of students and their belongings do not apply to student lockers, desks and other school storage places. Students have no reasonable expectation of privacy with respect to these places and school officials retain complete control over them. This means that student lockers, desks and other school storage places may be subject to search at any time by school officials, without prior notice to students and without their consent.

### B.     Strip searches

A strip search is a search that requires a student to remove any or all of his or her clothing, other than an outer coat or jacket. If an authorized school official believes it is necessary to conduct a strip search of a student, the school official may do so only if the search is authorized in advance by the Superintendent or the school attorney. The only exception to this rule requiring advanced authorization is when the school official believes there is an emergency situation that could threaten the safety of the student or others.

Strip searches may only be conducted by an authorized school official of the same sex as the student being searched and in the presence of another district professional employee who is also of the same sex as the student.

In every case, the school official conducting a strip search must have probable cause – not simply reasonable cause – to believe the student is concealing

evidence of a violation of law or the district code. In addition, before conducting a strip search, the school official must consider the nature of the alleged violation, the student's age, the student's record and the need for such a search.

School officials will attempt to notify the student's parent by telephone before conducting a strip search, or in writing after the fact if the parent could not be reached by telephone.

**C.**      **Documentation of Searches**

The authorized school official conducting the search shall be responsible for promptly recording the following information about each search:

1.      Name, age and grade of student searched.
2.      Reasons for the search.
3.      Name of any informant(s).
4.      Purpose of search (that is, what item(s) were being sought).
5.      Type and scope of search.
6.      Person conducting search and his or her title and position.
7.      Witnesses, if any, to the search.
8.      Time and location of search.
9.      Results of search (that is, what items(s) were found).
10.      Disposition of items found.
11.      Time, manner and results of parental notification.

~~The~~ A Principal or ~~the~~ a Principal's designee shall be responsible for the custody, control and disposition of any illegal or dangerous item(s) taken from a student. ~~The~~ A Principal or his or her designee shall clearly label each item taken from the student and retain control of the item(s), until the item is turned over to the police. ~~The~~ A Principal or his or her designee shall be responsible for personally delivering dangerous or illegal items to police authorities.

**D.**      **Police Involvement in Searches and Interrogations of Students**

District officials are committed to cooperating with police officials and other law enforcement authorities to maintain a safe school environment. Police officials, however, have limited authority to interview or search students in schools or at school functions, or to use school facilities in connection with police work. Police officials may enter school property or a school function to question or search a student or to conduct a formal investigation involving students only if they have:

1.      A search or an arrest warrant; or
2.      Probable cause to believe a crime has been committed on school property or at a school function; or
3.      Been invited by school officials.

Before police officials are permitted to question or search any student, ~~the~~ a

Principal or his or her designee shall first try to notify the student's parent to give the parent the opportunity to be present during the police questioning or search. If the student's parent cannot be contacted prior to the police questioning or search, the questioning or search shall not be conducted. ~~The~~ A Principal or designee will also be present during any police questioning or search of a student on school property or at a school function.

Students who are questioned by police officials on school property or at a school function will be afforded the same rights they have outside the school. This means:

1. They must be informed of their legal rights.
2. They may remain silent if they so desire.
3. They may request the presence of an attorney.

**E.      Child Protective Services Investigations**

Consistent with the district's commitment to keep students safe from harm and the obligation of school officials to report to child protective services when they have reasonable cause to suspect that a student has been abused or maltreated, the district will cooperate with local child protective services workers who wish to conduct interviews of students on school property relating to allegations of suspected child abuse, and/or neglect, or custody investigations.

All requests by child protective services to interview a student on school property shall be made directly to a Principal or his or her designee. ~~The~~ A Principal or designee shall set the time and place of the interview. ~~The~~ A Principal or designee shall decide if it is necessary and appropriate for a school official to be present during the interview, depending on the age of the student being interviewed and the nature of the allegations. If the nature of the allegations is such that it may be necessary for the student to remove any of his or her clothing in order for the child protective services worker to verify the allegations, the school nurse or other district medical personnel must be present during that portion of the interview. No student may be required to remove his or her clothing in front of a child protective services worker or school district official of the opposite sex.

A child protective services worker may not remove a student from school property without a court order, unless the worker reasonably believes that the student would be subject to danger of abuse if not he or she were not removed from school before a court order can reasonably be obtained. If the worker believes the student would be subject to danger of abuse, the worker may remove the student without a court order and without the parent's consent.

**XV.      PUBLIC CONDUCT ON SCHOOL PROPERTY**

The district is committed to providing an orderly, respectful environment

that is conducive to learning. To create and maintain this kind of an environment, it is necessary to regulate public conduct on school property and at school functions. For purposes of this section of the code, "public" shall mean all persons when on school property or attending a school function including students, teachers and district personnel.

The restrictions on public conduct on school property and at school functions contained in this code are not intended to limit freedom of speech or peaceful assembly. The district recognizes that free inquiry and free expression are indispensable to the objectives of the district. The purpose of this code is to maintain public order and prevent abuse of the rights of others.

All persons on school property or attending a school function shall conduct themselves in a respectful and orderly manner. In addition, all persons on school property or attending a school function are expected to be properly attired for the purpose they are on school property.

## A. Prohibited Conduct

No person, either alone or with others, shall:

1. Intentionally injure any person or threaten to do so.
2. Intentionally damage or destroy school district property or the personal property of a teacher, administrator, other district employee or any person lawfully on school property, including graffiti or arson.
3. Disrupt the orderly conduct of classes, school programs or other school activities.
4. Distribute or wear materials on school grounds or at school functions that are obscene, advocate illegal action, appear libelous, obstruct the rights of others, or are disruptive to the school program.
5. Intimidate, harass or discriminate against any person on the basis of actual or perceived race, color, creed, weight, national origin, ethnic group, religion, religious practice, age, gender (including gender identity and expression), sex, sexual orientation or disability.
6. Enter any portion of the school premises without authorization or remain in any building or facility after it is normally closed.
7. Obstruct the free movement of any person in any place to which this code applies.
8. Violate the traffic laws, parking regulations or other restrictions on vehicles.
9. Possess, consume, sell, distribute or exchange alcoholic beverages, controlled substances, or be under the influence of either on school property or at a school function.
10. Possess or use weapons in or on school property or at a school function, except in the case of law enforcement officers or except

as specifically authorized by the school district.

11. Loiter on or about school property.
12. Gamble on school property or at school functions.
13. Refuse to comply with any reasonable order of identifiable school district officials performing their duties.
14. Willfully incite others to commit any of the acts prohibited by this code.
15. Violate any federal or state statute, local ordinance or Board policy while on school property or while at a school function.

## B. Penalties

Persons who violate this code shall be subject to the following penalties:

1. Visitors. Their authorization, if any, to remain on school grounds or at the school function shall be withdrawn and they shall be directed to leave the premises. If they refuse to leave, they shall be subject to ejection.
2. Students. They shall be subject to disciplinary action as the facts may warrant, in accordance with the due process requirements.
3. Tenured faculty members. They shall be subject to disciplinary action as the facts may warrant in accordance with Education Law § 3020-a or any other legal rights that they may have.
4. Staff members in the classified service of the civil service entitled to the protection of Civil Service Law § 75. They shall be subject to immediate ejection and to disciplinary action as the facts may warrant in accordance with Civil Service Law § 75 or any other legal rights that they may have.
5. Staff members other than those described in subdivisions **3 and 4**. They shall be subject to warning, reprimand, suspension or dismissal as the facts may warrant in accordance with any legal rights they may have.

## C. Enforcement

~~The~~ A Principal or his/her designee shall be responsible for enforcing the conduct required by this code.

When ~~the~~ a Principal or his or her designee sees an individual engaged in prohibited conduct, which in his or her judgment does not pose any immediate threat of injury to persons or property, ~~the~~ a Principal or designee shall tell the individual that the conduct is prohibited and attempt to persuade the individual to stop. ~~The~~ A Principal or designee shall also warn the individual of the consequences for failing to stop. If the person refuses to stop engaging in the prohibited conduct, or if the person's conduct poses an immediate threat of injury to persons or property, ~~the~~ a Principal or designee shall have the individual removed immediately from school property or the school function. If necessary, local law enforcement authorities will be contacted to assist in removing the person.

The district shall initiate disciplinary action against any student or staff member, as appropriate, with the "Penalties" section above. In addition, the district reserves its right to pursue a civil or criminal legal action against any person violating the code.

## XVI. DISSEMINATION AND REVIEW

### A. Dissemination of Code of Conduct

The Board will work to ensure that the community is aware of this code of conduct by:

1. Providing copies of an age-appropriate, written in plain language, summary of the code to all students at a general assembly held at the beginning of each school year.
2. Providing a plain language summary to all parents at the beginning of the school year, and thereafter on request.
3. Posting the complete code of conduct on the district's website..
4. Providing all current teachers and other staff members with a copy of the code and a copy of any amendments to the code as soon as practicable after adoption.
5. Providing all new employees with a copy of the current code of conduct when they are first hired.
6. Making copies of the code available for review by students, parents and other community members.

The Board will sponsor an in-service education program for all district staff members to ensure the effective implementation of the code of conduct. The Superintendent may solicit the recommendations of the district staff, particularly teachers and administrators, regarding in-service programs pertaining to the management and discipline of students. On-going professional development will be included in the district's professional development plan, as needed.

### B. Review of Code of Conduct

The Board will review this code of conduct every year and update it as necessary. In conducting the review, the Board will consider how effective the code's provisions have been and whether the code has been applied fairly and consistently.

The Board may appoint an advisory committee to assist in reviewing the code and the district's response to code of conduct violations. The committee will be made up of representatives of student, teacher, administrator, and parent organizations, school safety personnel and other school personnel.

Before adopting any revisions to the code, the Board will hold at least one public hearing at which school personnel, parents, students and any other interested party may participate.

The code of conduct and any amendments to it will be filed with the Commissioner of Education no later than 30 days after adoption.

Adoption date: August 26~~9~~, 2024~~3~~

## CODE OF CONDUCT

**I.      INTRODUCTION**

The Board of Education ("Board") is committed to providing a safe and orderly school environment where students may receive and district personnel may deliver quality educational services without disruption or interference. Responsible behavior by students, teachers, other district personnel, parents and other visitors is essential to achieving this goal.

The district has a long-standing set of expectations for conduct on school property and at school functions. These expectations are based on the principles of civility, mutual respect, citizenship, character, tolerance, honesty and integrity.

The Board recognizes the need to clearly define these expectations for acceptable conduct on school property, identify the possible consequences of unacceptable conduct, and to ensure that discipline, when necessary, is administered promptly and fairly. To this end, the Board adopts this code of conduct ("code").

Unless otherwise indicated, this code applies to all students, school personnel, parents and other visitors when on school property, attending a school function, or that which otherwise affects the District's educational program.

**II.      DEFINITIONS**

A.  Definitions of Key Words and Terms.

For purposes of this Code, the following words and phrases shall have the meanings set forth below:

1.    *Assault: The physical abuse, or infliction of personal injury, or unlawful detention of any person and the intentional use of physical force, or the threat thereof, that places, or attempts to place, another person in well-founded fear of personal injury.*

2.    *Civil Rights: A right, benefit or protection that is guaranteed to an individual by either the federal or New York State Constitution or statute.*

3.    *Controlled Substance: A drug or other substance identified in certain provisions of the federal Controlled Substance Act specified in both federal and state law and regulations that apply to this Code.*

4.    *Disabled Student: A student who has been classified as having a disability pursuant to the provisions of IDEA (Individualized Disabilities Educational Act) and Article 89 of the Education Law, or one who the District is deemed to know has a disability within the meaning of 34 CFR §300.527.*

5. *District Function*: Any school-sponsored extra-curricular event or activity.

6. *District Property*: Any place in or within any building, structure, athletic playing field, playground, parking lot or land contained within the real property boundary lines of the District's buildings, or other district owned or controlled property, or in or on a school bus defined in Vehicle and Traffic Law §142.5

7. *Explosive:* An explosive device of a nature or in a quantity that is sufficient to cause injury to the person of the holder thereof or to the person or property of others, including the District.

8. *Gender*: actual or perceived sex, including a person's gender identity or expression.

9. *Gender Expression*: the manner in which a person represents or expresses gender to others, often through behavior, clothing, hairstyle, activities, voice or mannerisms.

10. *Gender Identity*: one's self-conception as being male or female, as distinguished from actual biological sex or sex assigned at birth.

11. *Illegal Drugs*: A controlled substance except for those legally possessed or used under the supervision of a licensed health-care professional, or those legally possessed or used under any other authority under the Controlled Substances Act or any other federal or New York State law.

12. *Illegal Substances*: Alcohol, illegal drugs and inhalants, marijuana, cocaine, LSD, PCP, amphetamines, heroin, steroids, look-alike drugs, and any substances commonly referred to as "designer drugs."

13. *Interim Alternative Educational Setting ("IAES")*: A temporary education placement for a disabled student for a period of up to 45 days, other than the student's current placement at the time the behavior precipitating the IAES placement occurred, that enables the student to continue to progress in the general curriculum, to continue to receive appropriate services and modifications, including those described on the student's current IEP ("Individual Educational Plan"), The IEP should be modified to include services and modifications to address the behavior which precipitated the IAES placement that are designed to prevent such behavior from recurring.

14. *In-School Suspension*: The temporary removal of a student from the classroom and the placement of that student in another designated area of the school building where the student will receive substantially equivalent, alternative education.

15. *Parent*: The biological, adoptive or foster parent, guardian or person in parental relation to a student.

16. *Removal*: As it relates to a disabled student, the removal for disciplinary reasons from the student's current educational placement, other than a suspension and change in placement to an interim alternative educational setting (IAES), ordered by an

3

*impartial hearing officer because the student poses a risk of harm to himself/herself or others.*

17. *Removal:* As it relates to a non-disabled student who is disruptive in class, the removal from the classroom to ensure that the other students continue to learn. A classroom teacher may remove a student from class for up to one day if the teacher determines that the student is disruptive. The removal from class applies to the class of the removing teacher only. For purposes of this Code, the removal commences when the student is asked to leave a teacher's classroom.

18. *Sexual orientation:* actual or perceived heterosexuality, homosexuality or bisexuality.

19. *Suspension:* The disciplinary removal of a student from his or her regular education program and activities in accordance with Education Law §3214.

20. *Violent Student:* A student under the age of 21 who (a) commits an act of violence upon a school employee; or (b) commits, while on District Property or at a District Function, an act of violence upon another student or any other person lawfully on District Property or at the District Function; or (c) possesses a Weapon while on District Property or at a District Function; or (d) displays, while on District Property or at a District Function, what appears to be a Weapon; or (e) threatens, while on District Property or at a District Function, to use a Weapon; or (f) knowingly and intentionally damages or destroys the personal property of any school employee or any person lawfully on District Property or at a District Function; or
(g) knowingly and intentionally damages or destroys District Property.

21. *Visitor:* Anyone on District Property or at a District Function who is not a District employee or a student of the school building in which the individual is physically present.

22. *Weapon:* A firearm as defined in 18 USC §921 for purposes of the Gun Free Schools Act, and any device, instrument, material or substance, animate or inanimate, that is used for, or is readily capable of causing death or serious bodily injury, and any other gun, pistol, revolver, shotgun, rifle, machine gun, disguised gun, BB gun, starter gun, pellet gun, dagger, dirk, razor, stiletto, switchblade knife, gravity knife, pocket knife with a blade of at least 2 ½ inches, brass knuckles, sling shot, metal knuckle knife, box cutters, cane sword, electronic dart gun, Kung Fu star, electronic stun gun, pepper spray or other noxious spray, explosive or incendiary bomb, or other device, instrument, material, or substance that can cause serious physical injury or death when used as a weapon.

**III.** **STUDENT RIGHTS AND RESPONSIBILITIES**

## A.     Student Rights

The district is committed to safeguarding the rights given to all students under state and federal law. In addition, to promote a safe, healthy, orderly and civil school environment, all district students have the right to:

1.  Take part in all district activities on an equal basis regardless of race, color, creed, national origin, weight, ethnic group, religion, religious practice, gender or sexual orientation or disability.
2.  Present their version of the relevant events to school personnel authorized to impose a disciplinary penalty in connection with the imposition of the penalty.
3.  Access school rules and, when necessary, receive an explanation of those rules from school personnel.

## B.     Student Responsibilities

All district students have the responsibility to:

1.  Contribute to maintaining a safe and orderly school environment that is conducive to learning and to show respect to other persons and to property.
2.  Be familiar with and abide by all district policies, rules and regulations dealing with student conduct.
3.  Attend school every day unless they are legally excused and be in class, on time, and prepared to learn.
4.  Work to the best of their ability in all academic and extracurricular pursuits and strive toward their highest level of achievement possible.
5.  React to direction given by teachers, administrators and other school personnel in a respectful, positive manner.
6.  Work to develop mechanisms to control their anger.
7.  Ask questions when they do not understand.
8.  Seek help in solving problems that might lead to discipline.
9.  Dress appropriately for school and school functions.
10. Accept responsibility for their actions.
11. Conduct themselves as representatives of the district when participating in or attending school-sponsored extracurricular events and to hold themselves to the highest standards of conduct, demeanor, and sportsmanship.

## IV.     ESSENTIAL PARTNERS

## A.     Parents

All parents are expected to:

1. Recognize that the education of their child(ren) is a joint responsibility of the parents and the school community.
2. Send their children to school ready to participate and learn.
3. Ensure their children attend school regularly and on time.
4. Ensure absences are excused.
5. Insist their children be dressed and groomed in a manner consistent with the student dress code.
6. Help their children understand that in a democratic society appropriate rules are required to maintain a safe, orderly environment.
7. Know school rules and help their children understand them.
8. Convey to their children a supportive attitude toward education and the district.
9. Build good relationships with teachers, other parents and their children's friends.
10. Help their children deal effectively with peer pressure.
11. Inform school officials of changes in the home situation that may affect student conduct or performance.
12. Provide a place for study and ensure homework assignments are completed.

**B.** **Teachers**

All district teachers are expected to:

1. Maintain a climate of mutual respect and dignity for all students regardless of actual or perceived race, color, weight, national origin, ethnic group, religion, religious practice, disability, sexual orientation, gender or sex, which will strengthen students' self-concept and promote confidence to learn.
2. Be prepared to teach.
3. Demonstrate interest in teaching and concern for student achievement.
4. Know school policies and rules, and enforce them in a fair and consistent manner.
5. Communicate to students and parents:
   a. ____Course objectives and requirements
   b. ____Marking/grading procedures
   c. ____Assignment deadlines
   d. ____Expectations for students
   e. ____Classroom discipline plan.
6. Communicate regularly with students, parents and other teachers concerning growth and achievement.
7. Maintain confidentiality in conformity with federal and state law.
8. Participate in school-wide efforts to provide adequate supervision in all school spaces, in conformity with the Taylor Law.

9. Address issues of harassment or any situation that threatens the emotional or physical health or safety of any student, school employee or any person who is lawfully on school property or at a school function.

10. Address personal biases that may prevent equal treatment of all students in the school or classroom setting.

**C.** **Guidance Counselors**

1. Assist students in coping with peer pressure, personal, social and emotional problems.

2. Initiate teacher/ student/ counselor conferences and parent/ teacher/ student/ counselor conferences, as necessary, as a way to resolve problems.

3. Regularly review with students their educational progress and career plans.

4. Provide information to assist students with career and college planning.

5. Encourage students to benefit from the curriculum and extracurricular programs.

6. Maintain confidentiality in accordance with federal and state law.

7. Maintain a climate of mutual respect and dignity for all students regardless of actual or perceived race, color, weight, national origin, ethnic group, religion, religious practice, disability, sexual orientation, gender or sex.

8. Make known to students and families the resources in the community that are available to meet their needs.

9. Participate in school-wide efforts to provide adequate supervision in all school spaces.

10. Address issues of harassment or any situation that threatens the emotional or physical health or safety of any student, school employee, or any person who is lawfully on school property or at a school function.

11. Address personal biases that may prevent equal treatment of all students.

**D.** **Other School Personnel**

1. Maintain a climate of mutual respect and dignity for all students regardless of actual or perceived race, color, weight, national origin, ethnic group, religion, religious practice, disability, sexual orientation, gender, or sex.

2. Maintain confidentiality in accordance with federal and state law.

3. Be familiar with the code of conduct.

4. Help children understand the district's expectations for maintaining a safe, orderly environment.

5. Participate in school-wide efforts to provide adequate supervision in

all school spaces.

6. Address issues of harassment or any situation that threatens the emotional or physical health or safety of any student, school employee, or any person who is lawfully on school property or at a school function.

7. Address personal biases that may prevent equal treatment of all students.

**E.   Principals**

1. Promote a safe, orderly and stimulating school environment, supporting active teaching and learning.

2. Ensure that students and staff have the opportunity to communicate regularly with ~~the~~ a Principal and approach ~~the~~ a Principal for redress of grievances.

3. Evaluate on a regular basis all instructional programs.

4. Support the development of and student participation in appropriate extracurricular activities.

5. Be responsible for enforcing the code of conduct and ensuring that all cases are resolved promptly and fairly.

6. Maintain confidentiality in accordance with federal and state law.

7. Provide support in the development of the code of conduct, when called upon. Disseminate the code of conduct and anti-harassment policies.

8. Participate in school-wide efforts to provide adequate supervision in all school spaces.

9. Address issues of harassment or any situation that threatens the emotional or physical health or safety of any student, school employee, or any person who is lawfully on school property or at a school function.

10. Address personal biases that may prevent equal treatment of all students and staff.

**F.   The Dignity Act Coordinator(s)**

1. Promote a safe, orderly and stimulating school environment, supporting active teaching and learning for all students regardless of actual or perceived race, color, weight, national origin, ethnic group, religion, religious practice, disability, sexual orientation, gender or sex.

2. Oversee and coordinate the work of the district-wide and building-level bullying prevention committees.

3. Identify curricular resources that support infusing civility in classroom instruction and classroom management; and provide guidance to staff as to how to access and implement those resources.

4. Coordinate, with the Professional Development Committee, training in support of the bullying prevention committee.

5. Be responsible for monitoring and reporting on the effectiveness of the district's bullying prevention policy.

6. Address issues of harassment or any situation that threatens the emotional or physical health or safety of any student, school employee, or any person who is lawfully on school property or at a school function.

7. Address personal biases that may prevent equal treatment of all students and staff.

## G. Superintendent

1. Promote a safe, orderly and stimulating school environment, supporting active teaching and learning for all students regardless of actual or perceived race, color, weight, national origin, ethnic group, religion, religious practice, disability, sexual orientation, gender or sex.

2. Review with district administrators the policies of the Board of education and state and federal laws relating to school operations and management.

3. Inform the Board about educational trends relating to student discipline.

4. Work to create instructional programs that minimize problems of misconduct and are sensitive to student and teacher needs.

5. Work with district administrators in enforcing the code of conduct and ensuring that all cases are resolved promptly and fairly.

6. Maintain confidentiality in accordance with federal and state law.

7. Participate in school-wide efforts to provide adequate supervision in all school spaces.

8. Address issues of harassment or any situation that threatens the emotional or physical health or safety of any student, school employee, or any person who is lawfully on school property or at a school function.

9. Address personal biases that may prevent equal treatment of all students and staff.

## H. Board of Education

1. Collaborate with student, teacher, administrator, and parent organizations, school safety personnel and other school personnel to develop a code of conduct that clearly defines expectations for the conduct of students, district personnel and visitors on school property and at school functions.

2. Adopt and review at least annually the district's code of conduct to evaluate the code's effectiveness and the fairness and consistency of its implementation.

3. Lead by example by conducting Board meetings in a professional, respectful, courteous manner.

4. Promote a safe, orderly and stimulating school environment, supporting active teaching and learning for all students regardless of actual or perceived race, color, weight, national origin, ethnic group, religion, religious practice, disability, sexual orientation, gender or sex.

5. Maintain confidentiality in accordance with federal and state law.

6. Develop and recommend a budget that provides programs and activities that support achievement of the goals of the code of conduct.

7. Address issues of harassment or any situation that threatens the emotional or physical health or safety of any student, school employee, or any person who is lawfully on school property or at a school function.

8. Address personal biases that may prevent equal treatment of all students and staff.

## V. STUDENT DRESS CODE

All students are expected to give proper attention to personal cleanliness and to dress appropriately for school and school functions. Students and their parents have the primary responsibility for acceptable student dress and appearance. Teachers and all other district personnel should exemplify and reinforce acceptable student dress and help students develop an understanding of appropriate appearance in the school setting.

A student's dress, grooming and appearance, including hair style/color, jewelry, make-up, and nails, shall:

1. Be safe, appropriate and not disrupt or interfere with the educational process.

2. Recognize that extremely brief garments such as tube tops, net tops, halter tops, spaghetti straps, ~~tank tops,~~ plunging necklines (front and/or back), and exposed midriffs are not acceptable. The "two finger rule" shall apply to the width of the shoulder covering.~~;~~

3. All ~~short~~ shorts, ~~short~~ skirts, and ~~see-through garments are not appropriate~~ dresses must cover all personal private areas at all times in all scenarios. Also recognize that extremely tight, thin garments should include an additional outer layer.

4. Ensure that underwear is completely covered with outer clothing. Pajamas are not appropriate.

5. Include footwear at all times. Footwear that is a safety hazard, for example roller footwear, will not be allowed.

6. Not include the wearing of hats, ~~bandanas~~ hoods, sun glasses, or gang related attire except for a medical or religious purpose.

7. Not include items that are vulgar, obscene, libelous, or that belittle others on account of race, color, religion, creed, national origin, gender, sexual orientation or disability.

8. Not promote and/or endorse the use of alcohol, tobacco or illegal drugs and/or encourage other illegal or violent activities.
9. Not include chains or spike-type collar/arm bracelets.
10. Not include sharp objects such as construction tools, fishing gear, etc.

The A Building Principal or his/her designee shall be responsible for informing all students and their parents of the student dress code at the beginning of the school year and any revisions to the dress code made during the school year.

Students who violate the student dress code shall be required to modify their appearance by covering or removing the offending item, and if necessary or practical, replacing it with an acceptable item. Any student who refuses to do so shall be subject to discipline, up to and including in-school suspension for the day. Any student who repeatedly fails to comply with the dress code shall be subject to further discipline, up to and including out of school suspension.

### SPIRIT WEEK GUIDELINES

Students may wear hats, bandanas, and pajamas during school wide, club organized spirit week events ONLY as they relate to the theme of the day.

### FORMAL DANCE ATTIRE GUIDELINES

Formal prom attire may be classified as a tuxedo or dress suit, including a bow tie, necktie, turtleneck, or priest-collar shirt, which may include a vest and/or cummerbund. Shirts are to be worn at all times. Shoes must be worn at all times and dress shoes preferred.

Traditionally, formal dresses or gowns may be strapless or may feature spaghetti straps. Bare or open backs are acceptable, however bare stomachs/mid-driffs are not permitted. Dress shoes or sandals are to be worn at all times. Undergarments should not be visible. See-through apparel or dresses with slits above the mid-thigh area are not permitted. Garments that are extremely tight or low cut are not permissible.

### VI. PROHIBITED STUDENT CONDUCT

The Board of Education expects all students to conduct themselves in an appropriate and civil manner, with proper regard for the rights and welfare of other students, district personnel and other members of the school community, and for the care of school facilities and equipment.

The best discipline is self-imposed, and students must learn to assume and accept responsibility for their own behavior, as well as the consequences of their misbehavior. District personnel who interact with students are expected to use disciplinary action only when necessary and to place emphasis on the students'

ability to grow in self-discipline.

The Board recognizes the need to make its expectations for student conduct while on school property or engaged in a school function specific and clear. The rules of conduct listed below are intended to do that and focus on safety and respect for the rights and property of others. Students who will not accept responsibility for their own behavior and who violate these school rules will be required to accept the penalties for their conduct.

Students may be subject to disciplinary action, up to and including suspension from school, when they engage in acts of misconduct as outlined below:

## VII. VIOLATIONS OF THE CODE OF CONDUCT

### A. Definitions

For the purposes of this code, the following definitions apply.

"Disruptive student" means an elementary or secondary student under the age of 21 who is substantially disruptive of the educational process or substantially interferes with the teacher's authority over the classroom.

"Parent" means the biological, adoptive or foster parent, guardian, or person in parental relation to a student.

"School property" means in or within any building, structure, athletic playing field, playground, parking lot, or land contained within the real property boundary line of a public elementary or secondary school, or in or on a school bus, defined in Vehicle and Traffic Law § 142.

"School function" means any school-sponsored extra-curricular event or activity.

"Violent student" means a student under the age of 21 who:

1) **Commits an act of violence upon a school employee.**
2) **Commits, while on school property or at a school function, an act of violence upon another student or any other person lawfully on school property or at the school function.**
3) **Possess, while on school property or at a school function, a firearm or weapon.**
4) **Displays, while on school property or at a school function, what appears to be a firearm or weapon.**
5) **Threatens, while on school property or at a school function, to use a firearm or weapon.**
6) **Knowingly and intentionally damages or destroys the personal property of any school employee or any person**

**lawfully on school property or at a school function.**
7) **Knowingly and intentionally damages or destroys school district property.**

## B. Acts of Misconduct Defined.

The Board expects the members of the school community to conduct themselves in an appropriate and civil manner, with proper regard for the rights and welfare of students, employees and other members of the school community, and for the care of school facilities and equipment.

The commission of any of the following acts (as they are defined below) is prohibited on district property and at a district function. Such conduct is punishable by the penalties set forth in Section X of this Code after compliance with the procedures set forth in Section X hereof.

1. Acts of Violence: To strike, hit, kick, punch, scratch or otherwise physically assault another person: to damage or destroy the personal property of a teacher, administrator, other district employee or any person lawfully on district property; or to intentionally damage or destroy district property; or to commit any act that is included within the definition of a Violent Pupil, as defined herein. Acts of Violence include Arson, Assault, Bomb Threats, Fighting, and Possession of an Explosive or a Weapon.
2. Arson: The intentional destruction or other damage by fire, explosion or smoke to real property or personal property of the district, to personal property of district students or staff, or to personal property of third parties.
3. Assault: The physical abuse, or infliction of personal injury, or unlawful detention of any person and the intentional use of physical force, or the threat thereof, that places, or attempts to place, another person in well-founded fear of personal injury.
4. Bomb Threat: The intentional false claim that an explosive device is located on district property or at a district function.
5. Bullying: Inappropriate persistent behavior including threats or intimidation of others, treating others cruelly, terrorizing, coercing, or habitual put-downs and/or badgering others
6. Cheating: The act of giving or receiving (or conspiring to give or receive) answers to class assignment (includes copying computer material) or test answers from another source.
7. Conspiracy: An agreement or plan to do something harmful, wrongful, unlawful, or illegal.
8. Destruction of Property: The destruction, defacing or other impairment of District Property or property belonging to other persons.
9. Disorderly Conduct: Conduct that obstructs or disrupts a teaching, research, administrative or disciplinary procedure or any other authorized district activity. Disorderly conduct includes, but is not limited to; running in hallways; making unreasonable noise, using

language or gestures that are profane, lewd, vulgar or abusive; the willful interference with the free flow of vehicular or pedestrian traffic; or engaging in any willful act that disrupts the normal operation of the school community.

10. _Disruptive Conduct_: Conduct by a student under the age of 21 that is substantially disruptive of the educational process or substantially interferes with the teacher's authority over the classroom. Disruptive conduct includes, but is not limited to, the failure to comply with the lawful directions of teachers, school administrators or other district employees, and speech or gesture, or communication both in person or digitally, which by virtue of its content and/or circumstances is likely to disrupt the conduct of classes of other district activities or to undermine the maintenance of discipline within the school setting. Disruptive conduct also includes being late for school or class; being unprepared for class; and committing other conduct that detracts from the delivery of the district's educational program.

11. _Drug or Alcohol Violation:_ The possession, use or sale of an illegal drug or illegal substance, or the act of being under the influence of drugs without appropriate authorization (includes substances controlled by law, marijuana, medications or other drugs or substances which stimulate or are purported by the student to be any of the above). Insubordination while under investigation for a drug violation will also be considered a drug violation.

12. _Extortion:_ Any intentional action which reasonably instills fear in another individual that the actor or another person will cause injury to the persons or property of that individual or another person for the purpose of obtaining money or property from that individual.

13. _False Alarm:_ The intentional or grossly negligent activation of a fire alarm when no threat of fire exists, or the initiation, instigation or communication to the district, or any of its employees of any other claim of fire or threat thereof when none exists.

14. _Fighting:_ Combative physical contact or other violent encounters between two or more persons.

15. _Forgery:_ The involvement in the imitation or fabrication of another's signature or written work.

16. _Gambling:_ The risking of something of value upon the outcome of a contest of chance or a future contingent event upon an agreement or understanding that one will receive something of value in the event of a certain outcome.

17. _Harassment:_ The act of threatening bodily harm or repeatedly tormenting another person and any other behavior that is intended to or has the reasonable effect of annoying, intimidating or causing fear in another. Harassment may take the form of comments, name-calling, jokes, stalking, perpetuating rumors or gossip, offensive gestures, offensive remarks, physical abuse, or any other behavior that is designed to annoy, intimidate, or cause fear of personal safety. For more information refer to BOE Policy #3420.

    a. _Bias Harassment_: The act of threatening bodily harm or by repeatedly tormenting another person based on the victim's

14

race, ethnic origin, religion, religious practice, cultural difference, weight, sex, sexual orientation, gender or disability. Bias harassment may take the form of comments, jokes, name calling, innuendoes, offensive conversations, perpetuating rumors or gossip, offensive gestures noises, blocking a victim's path, assault, or any other behavior that is designed to show disrespect to an individual based on cultural, racial, or religious differences or based on a disability. For more information, see BOE Policies #3420 and #6121.

b. <u>Sexual Harassment:</u> The act of threatening bodily harm or by repeatedly tormenting another person based on genders. Sexual harassment may take the form of comments, jokes, name calling, innuendoes, offensive conversations, perpetuating unwelcome touching of another" clothes, pinching, whistling or other noises, blocking a victim" path, assault, or any other behavior that is intended to or has the reasonable effect of being offensive based on a person's gender. For more information, refer to BOE Policies #6121, #7550, and #7551.

18. <u>Insubordination:</u> The refusal or failure to comply with any district rule, regulation or policy (including those relating to attendance), or the failure to comply with a reasonable request from District personnel or representatives authorized to make such a request. Insubordination, as it relates to students, includes, but is not limited to, the failure to comply with the lawful directives of teachers, school administrators or other such individual; lateness for, missing or leaving school without permission; and skipping detention. Insubordination, as it relates to non-students, includes, but is not limited to, the violation of regulations governing the use of district property, and the failure to comply with the lawful directions of district employees or law enforcement officers acting in performance of their duties.

19. <u>Littering:</u> The general distribution or dissemination of printed, written, recorded or other materials without the prior approval of ~~the~~ a ~~building~~ principal. The granting of approval or the refusal to grant the same shall be determined pursuant to administrative guidelines for the distribution and dissemination of materials on district property.

20. <u>Loitering:</u> Remaining in an area after the bell when assigned to a particular classroom at that time. Loitering also includes congregating in the halls to impede traffic, or standing next to the building.

21. <u>Off-Campus Misconduct that affects school</u>: Off-campus misconduct that endangers the health and safety of students or staff within the school, or adversely affects the educational process, or can reasonably be expected to do so. Examples of such misconduct include, bit are not limited to, a) Cyberbullying; b) Threatening, hazing, harassing students or school personnel over the phone or the internet; c) Using message boards to convey threats, derogatory comments or post pornographic pictures of students or school personnel; or d) Obtaining images or recordings (audio and/or video) of a student, teacher or staff member without their consent, that are meant to harass, discriminate or objectify the group or individual.

22. Other Misconduct: The act of soliciting, commanding, aiding or otherwise abetting any person to commit any act or conduct that is proscribed by this Code, and the commission or omission of any act which is in violation of any Federal or State law or any district rule or regulation, including the district's School Safety Plans.

23. Parking Violations: The act of parking a student-operated vehicle on district property without a parking permit, or parking in unauthorized areas. The district assumes no liability for vandalism/theft of the vehicle while on school property. In addition, student vehicles are subject to search with reasonable suspicion.

24. Plagiarism: The unauthorized use of another's material that is represented as one's own work.

25. Possession of an Explosive. The use, actual or constructive possession, or the sale of an Explosive.

26. Possession of a Weapon: The use, actual or constructive possession, or the sale of a Weapon. No student, employee or visitor to the Copenhagen Central School District shall have in his or her possession upon school premises any weapon, or any object which is not necessary for school activities and which could be used as a weapon, or any other instrument capable of inflicting bodily harm. Students are prohibited from carrying knives.

27. Public Displays of Affection: The school is a place of business and student behaviors should reflect such. Public displays of affection between romantic couples are, therefore, limited to hand holding only.

28. Reckless Endangerment: The commission of any act that has the likely potential to cause bodily harm to another individual or oneself.

29. Repeatedly Disruptive Conduct: Misconduct that results in the student being removed from the classroom by teacher(s) on four or more occasions during a semester, or three or more occasions during a trimester.

30. Tardy: Students are tardy when they are not in their seats when the bell rings. Tardy to homeroom means arriving to homeroom after the bell, but before the attendance has been sent to the main office. Tardy to school means arriving to school after homeroom attendance has been sent to the main office.

31. Theft: The unlawful use, taking possession of, or control over, property belonging to the District or another.

32. Tobacco/Nicotine/Vaping Violations: The act of possessing, smoking or chewing tobacco, tobacco products or any other nicotine inhalant or any form of inhalant anywhere on school grounds. The use of tobacco or any inhalant delivered by any method including vaping (e-cigarette) is not allowed anywhere on school grounds. The possession of a lighter and/or matches or other smoking/inhaling/chewing paraphernalia, including electronic inhaling devices (vapes, e-cigarettes) is also prohibited.

33. Traffic Violation: The operation of a motor vehicle on district property at a speed in excess of fifteen (15) miles per hour, or the operation of

snowmobiles, motorbikes, go-carts, motor scooters, and other similar vehicles propelled by gasoline, diesel oil, fossil fuel or electric powered engines on district property. The only motor vehicles allowed to be operated on district property are those automobiles, buses and trucks that are (a) licensed by the Department of Motor Vehicles, (b) insured in compliance with the mandatory provisions of the Vehicle & Traffic Law, and (c) lawfully operated on the district's driveways, parking lots or other portions of district driveways, parking lots or other portions of district property for the purpose of attending district activities or conduction business or performing services for the district.

34. Trespassing: The entry upon or use of district property without proper authorization in situations where said property is restricted in entry or use. As it relates to students, trespassing includes a student's presence in any district building other than the school he or she regularly attends without permission from the administrator in charge of the building.

35. Truancy: The act of being illegally absent from school without the knowledge and consent of a parent/guardian, or failing to attend school when expected to be in school, or failing to attend classes in consecutive periods, or missing the BOCES bus.

36. Vandalism: The willful destruction of the real or personal property of the district or another person. (In addition to suspension, restitution in the form of money or work will be expected).

37. Violation of Civil Rights: Conduct that has the effect of depriving another of a civil right.

## VIII. REPORTING VIOLATIONS

All students are expected to promptly report violations of the code of conduct to a teacher, guidance counselor, the a Building Principal or his or her designee. Any student observing a student possessing a weapon, alcohol or illegal substance on school property or at a school function shall report this information immediately to a teacher, the a Principal, the a Principal's designee or the Superintendent of Schools.

All district staff who are authorized to impose disciplinary sanctions are expected to do so in a prompt, fair, dignified and lawful manner. District staff who are not authorized to impose disciplinary sanctions are expected to promptly report violations of the code of conduct to their supervisor, who shall in turn impose an appropriate disciplinary sanction, if so authorized, or refer the matter to a staff member who is authorized to impose an appropriate sanction.

Any weapon, alcohol or illegal substance found shall be confiscated immediately, if possible, followed by notification to the parent of the student involved and the appropriate disciplinary sanction, which may include permanent suspension and referral for prosecution.