# Exhibit O

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

Wyatt Wagner,

                                 **AFFIDAVIT IN OPPOSITION**
                                 **BY SUPERINTENDENT**
                                 **SCOTT CONNELL**
                                 **CIVIL ACTION NO.: 6:25-cv-00659**

                   Plaintiffs,

        v.

Copenhagen Central School District
and Scott Connell,

                   Defendants.

_____

STATE OF NEW YORK     )
COUNTY OF LEWIS) ss.:

        I, Scott Connell, being duly sworn, depose and say:

        1.      I submit this affidavit in opposition to the Plaintiff's application for emergency relief in this matter.

        2.      I am a resident of Jefferson County, and I am employed as the Superintendent of Schools of the Copenhagen Central School District.  I have been employed in that capacity for 14 years.  I have worked for the Copenhagen Central School District for 40 years.

        3.      I previously submitted an Affidavit in Opposition to the stay application and petition made by Mr. Wagner before the Commissioner of Education.  A copy of that affidavit sworn to February 12, 2025, is attached as **Exhibit A**.

        4.      I wish to incorporate the information contained in that affidavit in my statement herein.

        5.      I also wish to expand upon the information contained in my earlier affidavit.

6.     In paragraph eleven of the attached affidavit, I described an episode that I believe occurred in early November of 2024.  That situation involved Mr. Wagner taking issue with directions that had been given by our elementary school physical education teacher and about her handling of students' conduct in the physical education class.  I am reliably informed that the teacher had previously instructed students to ensure that the equipment that they got out during the after-school program run by the 4H club and supervised by Mr. Wagner, were returned properly to its proper place.  The teacher advised those students that they had failed repeatedly to return the equipment to the proper storage areas at the end of the 4H club after school session.  As a result, in one class, those students were not allowed to use that equipment.  While the rest of the class was using the equipment, they walked the perimeter of the gym.

7.     Contrary to the very inaccurate assertions by Mr. Wagner, those students were not required to run for the entire class period.  However, Mr. Wagner wouldn't know that because he never spoke directly to the teacher.  Instead, he came to my office and engaged in a very unprofessional and highly inappropriate verbal exchange with me.  During the exchange, Mr. Wagner substantially raised his voice and became extremely aggressive with me.  He criticized the teacher and accused her of "abusing" the students in her class.

8.     At the meeting in November of 2024, I informed Mr. Wagner that he was no longer welcome on school district premises because of his behavior.  I further informed him that if he needed to enter on district property he would need to contact me first for permission. He then left without further incident.  I heard nothing further from Mr. Wagner until January 13, 2025, as described below.

9.     At that time, I informed Mr. Wagner that he was wrong, and that the teacher had the right to manage the classroom as she saw fit, but that I would look into the matter further.

When I did look into it, I found that the teacher had acted appropriately and there was no need for any further follow-up investigation. Mr. Wagner made these accusations without speaking with the teacher.

10. Following that incident, as I indicated in my prior affidavit, I asked the Director of the Cornell Cooperative Extension who runs the 4H program, to simply assign a different staff member to our school rather than Mr. Wagner. This is the only action I have taken with respect to Mr. Wagner's employment.

11. I have had inquiries from other school districts who asked about why we had changed assignments of the 4H program. However, these occurred long after I am told Mr. Wagner separated from the employment of the Cornell Cooperative Extension 4H program and after his arrest. At no time did I undertake any action to damage his reputation or his career. Furthermore, it is Mr. Wagner who has undertaken high profile and very notorious actions that have drawn attention to his situation with our school district, as described below.

**THE TRESPASS NOTICE**

12. The attached affidavit describes the episode that preceded the trespass notice. It is significant to note that in the incident where Mr. Wagner was present inside the school building and created a significant disruption and disturbance on June 13, 2025. Mr. Wagner repeatedly asked and insisted that he be arrested. There is a video of the encounter with Mr. Wagner which is attached hereto as **Exhibit B**.

13. In that encounter Mr. Wagner repeatedly refused to leave the building. Had he complied, he would not have been arrested. However, he repeatedly insisted upon being arrested to the point where the school resource officer (also a Deputy Sheriff) stated in words or

substance "If you are insisting that I arrest you, then I will arrest you".  At that point Mr. Wagner was taken into custody and charged with a violation level offense of trespassing.

14.    I am reliably informed, the school resource officer, who is also a Deputy Sheriff in Lewis County, did not want to arrest Mr. Wagner.  However, Mr. Wagner insisted that he be arrested as demonstrated in the attached video of the incident.  (See **Exhibit B**).  This was filmed by Mr. Wagner without our knowledge.

15.    I am further reliably informed that knowledge of Mr. Wagner's arrest at our school for trespass purposes has been spread by word of mouth.  Additionally, we are aware of Facebook posts from Mr. Wagner that widely publicized his arrest for trespass and related issues.  In those Facebook posts, Mr. Wagner explained in detail about the circumstances of his arrest.  I respectfully submit that the reason information is known about Mr. Wagner's arrest is because Mr. Wagner has publicized those facts himself.  Attached, please find a series of Facebook posts by Mr. Wagner.  The earliest was March 25, 2025, two months before he filed this suit.  In that Facebook post, Mr. Wagner goes into great detail about the circumstances of his arrest.  Those Facebook posts are attached as **Exhibit C**.

16.    I also wish to point out that Mr. Wagner has also widely publicized the video of his arrest.  He took this video surreptitiously without knowledge of myself or anyone else present in the school.  However, he has widely circulated this video.  (See **Exhibit B**, attached).

17.    I respectfully submit that any negative impact upon Mr. Wagner's career and/or reputation arose out of the incident in which he was arrested, at his specific request.  Knowledge of the arrest was widespread because it was reported in the local media.  Therefore, any impact upon Mr. Wagner's career and/or reputation was not occasioned by something that I or the school district did, but rather by virtue of Mr. Wagner's own actions.  In my experience, a person

arrested at a school for trespass is unlikely to be granted access to other schools or government buildings.

18. Mr. Wagner also insisted that he had a "right" to be present on the District premises. This is an utterly false assertion. I am reliably informed that it has been repeatedly held by the courts of our state that a school district has broad authority over it's school buildings and may preclude people from attending events when, in the judgment of school authorities, it is appropriate to do so.

19. I am reliably informed that our state's highest court has repeatedly held that a school district has great discretion in determining who shall have access to school property and school students. I am further reliably informed that this deference has been afforded to school districts to exercise the ultimate authority over access to its school buildings.

20. In this case, Mr. Wagner was denied access to the school facilities because of his prior conduct. The decision to deny him access in November of 2024 was because of his rather outrageous and aggressive behavior directed toward me. He behaved inappropriately and accused one of our teachers of abusing students because she had taken standard disciplinary measures against students which were not excessive or disproportionate to the offense. Mr. Wagner concluded that the teacher acted inappropriately without so much as ever even speaking with the teacher.

21. I also note in Mr. Wagner's application to the Court that he alleged that the "trespass notice" was issued to him "without due process". This assertion is also false. Mr. Wagner was confronted on January 13, 2025, at approximately 10:15 a.m. Mr. Wagner had a full and fair opportunity to explain his position and conduct. He was interviewed by school personnel. It was only following that interaction with Mr. Wagner, having had a full and fair

opportunity to express his opinions and his position, that the letter of January 15, 2025, was issued to him. Upon information and belief, Mr. Wagner was granted minimum due process prior to the issuance of the "trespass" notice.

22. Mr. Wagner also alleges that we issued the trespass notice for reasons of retaliation. This also is a false assertion. The trespass notice was issued for reasons related to Mr. Wagner's behavior, conduct, and refusal to comply a lawful order that he remove himself from the school building as he was not authorized to be there based upon his prior conduct in November. Mr. Wagner had no "legal right" to be present on district property and I, as Superintendent, was within my lawful rights to exclude him based upon his behavior. It should also be noted that Mr. Wagner's actions were within the full view of students in the elementary school building where he raised his voice and loudly and aggressively argued with me and the school resource officer before we managed to escort him to the school resource officer's office. Mr. Wagner acted inappropriately and was aggressive and noncompliant. His actions were also in the presence of students whose day of learning was disrupted and interfered with by his highly inappropriate and offensive behavior in the cafeteria.

23. It is noted in Mr. Wagner's affidavit in support of his emergency injunctive relief, he claims that he had not violated any school code of conduct. This too, is false. Mr. Wagner behaved in a highly inappropriate manner in violation of the school code of conduct which applies to all students, staff, and other adults attending any activity in the school district. In the district's code of conduct, § 3410, a copy of which is attached hereto as **Exhibit D**, the District has rules and regulations about the conduct of adults in the schoolhouse. Mr. Wagner violated those rules and persisted in disruptive behavior.

24. In his affidavit, Mr. Wagner also insists that he did not engage in any illegal activities. This is refuted by his being arrested for trespass and then, I am informed, later pleading and accepting an adjournment in contemplation of dismissal. I am reliably informed that an adjournment in contemplation of dismissal is not the same as a conviction, however, it is significant that it was not an outright dismissal or acquittal.

25. Mr. Wagner also insists that he was not creating a disruption. In fact, however, he was. He was argumentative, aggressive and very loud in the presence of students in the hallway. He was positioned just outside the cafeteria where students were present at the time the episode began. Only after urging by the school resource officer and me did Mr. Wagner agree to step into the school resource officer's office so the door could be closed and no further outbursts by Mr. Wagner could be heard.

26. Mr. Wagner also falsely alleges that he was in a designated area as approved. Mr. Wagner was not authorized to be present in the building based upon the prior directive that I had given him. Unfortunately, not all my staff was aware of the directive I had given Mr. Wagner. I chose not to publicize that directive and assumed that Mr. Wagner would honor the directive I had given him. I purposely chose not to publicize that directive as I did not want to embarrass him.

27. Mr. Wagner alleged that he has sustained "irreparable harm". Upon information and belief, we have caused Mr. Wagner no harm to his reputation. To the contrary, any harm to his reputation appears to have been occasioned by his arrest for trespass at his insistence and his wide publication of the arrest by Facebook posts. His reputation, if it is damaged at all, was a result of his arrest, which he insisted upon, being publicized in Facebook.

7

28.     I am reliably informed that most school districts, including my own, perform background checks on people who are allowed access to the school buildings, in particular to meet with or to work with students in the school.  Any school district making a reasonably diligent inquiry into Mr. Wagner's background would find these various Facebook posts detailing the fact that he had been arrested for trespass at the Copenhagen Central School District.  These posts have been available for months.  I respectfully submit that Mr. Wagner is responsible for publicizing the information about his arrest and for making it a matter of common knowledge

29.     Mr. Wagner claimed that he has sustained personal injury and emotional distress as a result of the trespass notice.  We note with interest that there was no substantiation of any of the claims that he has made regarding his physical, mental, or emotional condition.  No medical reports or other information were submitted.  Further, these claims appear to be speculative. We submit that whatever emotional distress he may have suffered was a consequence of his own actions.

30.     I also wish to point out that Mr. Wagner alleges that he has lost numerous positions, both paid and volunteer, but does not list what those positions are or were.  As to his employment at Cornell Cooperative Extension/4H, Mr. Wagner voluntarily resigned from that employment.

31.     Mr. Wagner also alleges that he ended his "relationship" with his girlfriend. Again, these are speculative allegations which are wholly unsupported and unsubstantiated by any evidence in the record.  We respectfully submit that claims of that nature are on their face, frivolous.

32.     I respectfully submit that the claims of Mr. Wagner are utterly without merit and should be rejected.

33.     Attached as **Exhibit E** is a copy of the Petition that Mr. Wagner filed with the Commissioner of Education.  Mr. Wagner alleged in that petition the same claims or types of claims that he asserted in this case.  Mr. Wagner alleged that his First Amendment right of free speech was violated.  He alleged retaliation for engaging in protected speech and rights as a whistle blower.  Mr. Wagner also alleged a due process violation because he allegedly was not given an opportunity to respond to the allegations in the trespass notice.  This, despite the fact that he spoke with the Superintendent and the school resource officer and others prior to its issuance.

34.     Mr. Wagner demanded a stay of the trespass order from the Commissioner of Education.  The Commissioner of Education thereafter issued a denial of the request for a stay on February 19, 2025, some seven days after I submitted my affidavit in opposition to the petition.

35.     The fact that Mr. Wagner has sought the same relief in another forum is relevant to the validity of his claims, in this forum.  Attached as **Exhibit F** please find a copy of the Decision issued by the Commissioner of Education which rejected in whole Mr. Wagner's claims.  It is worthy of note that Mr. Wagner raised the same claims before the Commissioner of Education as he raises here.  Those claims were thoroughly reviewed by the Commissioner of Education and found those to be without merit.  Mr. Wagner's petition was dismissed on the merits.

36.     The Commissioner of Education reaffirmed the principle that school boards "exercise ultimate authority for access to students, school buildings, and school property generally".  The Commissioner further found that school boards may impose reasonable restrictions on an individual's access to school property.  The Commissioner further ruled that the

9

Petitioner (Mr. Wagner) had not demonstrated a clear legal right to his relief. The Commissioner observed as follows:

> "I acknowledge Petitioner's frustration that the Superintendent did not know, or acknowledge, the Petitioner had obtained approval to appear at the school on January 13, 2025 (footnote 2) but neither that nor Petitioner's interest in "documenting" the conduct of the Superintendent and SRO excused his obstinacy – which occurred during the school day and for a time, in the presence of students". At page 3.

> "Based on these incidents Respondent reasonably determined that Petitioner must obtain approval before accessing school property. There is no evidence in the record that Petitioner has made such a request to Respondent. As such, there is no basis to presume that such a request would be unreasonably denied. Moreover, Respondent indicates that this condition can be reviewed "on an annual basis". This provides Petitioner with an opportunity to demonstrate that he has abided by the directive and understands the importance of purporting himself appropriately in interactions with school staff." At pages 3-4.

37. Upon information and belief, this ruling by the Commissioner of Education reaffirmed that Petitioner is not absolutely barred from entering onto school property but may do so with permission granted in advance. This is something that the Plaintiff has never availed himself of, to my knowledge. To the contrary, the Plaintiff has ignored this provision and insisted that it is an absolute bar, which it is not.

**THIS CASE DOES NOT PRESENT AN EMERGENCY**

38. It is the position of the Copenhagen Central School District that this matter does not present an emergency for the Court, nor does it present a situation where the Plaintiff has demonstrated that he is entitled to any injunctive relief.

39. The incidents involving the Plaintiff occurred in November of 2024 and January 13, 2025 and the notice not to enter on District property was issued on the 15th of January, 2025.

10

40.     More than four months had elapsed between the issuance of the letter to Mr. Wagner directing him to not come on District property without permission of the Superintendent and the filing of the instant litigation.

41.     At no time in the submissions by Mr. Wagner did he address the reasons why more than four months elapsed between the issuance of the letter and the filing of this suit.  This delay belies any claim of a need for emergency action by the Court.  Upon information and belief, there has been no demonstration of ongoing harm to the Plaintiff necessitating Court intervention.

42.     In the January 15, 2025 "no trespass" letter (See **Exhibit G**), there is a procedure described there where Mr. Wagner could request access to the school buildings for a variety of reasons.  From January 15, 2025, to the present time, he has not once requested access to school facilities.

43.     Mr. Wagner, like any other resident of our community, has the absolute right to file complaints about any condition in the school, including safety concerns, as outlined in our Board policy.  Mr. Wagner has never availed himself of this opportunity.

44.     Mr. Wagner remains free to request permission to attend all manner of school events, file complaints, address the Board of Education, and participate in school activities as long as he follows the proper procedures.

45.     The record in this case is clear that there have been no other developments following the issuance of the January 15 letter.  There are simply no grounds to justify emergency relief under these circumstances when the Plaintiff himself waited more than three months to seek any form of relief.  We urge the Court to deny the application.